BRAND *v.* UNION ELEVATED RAILROAD COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF ILLINOIS.

No. 268. Argued May 6, 7, 1915.—Decided June 21, 1915.

Nothing in the Federal Constitution gives any one the right to have the jury instructed that he is entitled to damages for property taken, where the instruction is not based on some evidence or entitles him to damages without proof.

After an elevated railroad had been built in a street, the jury, in a suit brought by an abutting owner, viewed the premises, and the only testimony showed that the property was worth more after, than before, the erection of the structure; *held,* that the owner was not entitled to an instruction that the jury must exclude from their estimate of market value subsequent to the construction any enhancement from the facilities furnished to the property by the structure

itself, in the absence of any direct evidence as to whether any such enhancement exists.

By simply viewing property after the erection of an elevated structure in front of it, a jury cannot, in the absence of any evidence other than that the property is worth more than before the structure was built, ascertain what the market value was either before or just after the erection of the structure.

258 Illinois, 133, affirmed.

THE facts, which involve the right of an abutting property owner to recover damages for depreciation of his property by reason of the erection of an elevated railroad in the street, are stated in the opinion.

*Mr. Harry S. Mecartney* and *Mr. John S. Miller* for plaintiff in error.

*Mr. Roger L. Foote,* with whom *Mr. Addison L. Gardner, Mr. Randall W. Burne* and *Mr. Francis W. Walker* were on the brief, for defendant in error.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

By ordinary warranty deed from Calvin F. Rice, dated November 13, 1889, Edwin L. Brand became owner in fee simple of a lot, with five-story building (No. 259), fronting east on Wabash Avenue, described as follows: "The North Twenty-five (25) feet of Lot five (5) in Block seven (7) in Fractional Section Fifteen (15) Addition to Chicago." The record reveals no other facts concerning any rights acquired by the grantee who held possession until his death in 1900; and there is nothing to show how or conditions under which the City obtained and holds the street. Proceeding under a city ordinance the Union Elevated Railroad Company and other defendants during 1896 and 1897 caused construction of a double-track

elevated railroad along the center of Wabash Avenue (100 feet wide); and since October 3, 1897, have operated the same.

On October 2, 1902, plaintiffs—Brand's executors—commenced this common law action to recover a lump sum for damage consequent upon construction, permanent maintenance and operation of the railroad in front of the above-described premises. After alleging such construction, method of operation, noise, dust, dirt, vibration and other objectionable results the declaration concludes: "All of which said disturbances and injuries and grievances above complained of, have continued from and since, to-wit, said October 3, 1897, hitherto, and have caused and are now causing and will henceforth continue to cause a great and permanent damage and injury to said premises and building and said rights and easements therein, and by means thereof the said real estate has been greatly reduced in market value, to-wit, in the sum of Twenty-five thousand dollars ($25,000).

"And the plaintiffs aver that said defendants became and are bound to make full compensation to plaintiffs for the said loss and damage under the Constitution and Laws of the State of Illinois; but the said defendants, though often requested, have not, nor has any or either of them, paid said loss and damage or any part thereof, but hitherto have wholly neglected and refused and still neglect and refuse to do so, to the damage of said plaintiffs of Twenty-five thousand dollars ($25,000); wherefore they bring this suit."

Twelve years after the road was put into operation and seven after institution of the cause it was brought on for hearing—November, 1909—upon a plea of not guilty. Before the premises were viewed or any evidence taken, plaintiffs' counsel in his opening statement outlining facts and issues said: "They allege and claim that the premises known as No. 259 Wabash Avenue, owned by

Mr. Brand in his lifetime, and this cause of action sur-
viving to them as executors of his estate; that that prop-
erty has been damaged in its market value by the construc-
tion of the Elevated railroad structure in front of the
premises for public railroad uses.  .  .  .  The law as it
will be given to you, as we understand it, is that under the
Constitution of Illinois  .  .  .  private property shall
not be taken or damaged for public use without just com-
pensation, and we sue under that clause of the Constitu-
tion and upon the idea, and the basis, as we expect the law
to be given to you, that notwithstanding the City Ordi-
nance allowed the construction of the road that that is no
bar to our recovery if damages have been in fact sustained.
Damages in the eye of the law is damage to the market
value of the property, usually arising from some inter-
ference with the private enjoyment or use of the prop-
erty.  .  .  .  The theory is that this structure was built
for public uses by the companies organized under the
Railroad act of Illinois;  .  .  .  but it is a railroad in a
street and upon a structure which is violative of the or-
dinary rights of the abutter in the street, unless in some
way they can show some particular, special, immediate,
well-defined benefit to that property itself.  .  .  .  The
theory of the law is that so far as public works are con-
cerned, if a damage is created to the property the property
owner recovers in one lump sum for the damage, past,
present and future.  .  .  .  Now we expect the ev-
idence—and your view of the premises will be, as we think,
the most important thing in the case—the actual, physical
structure and its mode of operation and the noise and
racket and pandemonium, as we would call it, that the
road makes in front of the premises; the more or less ob-
struction to light and other inconvenience—some incon-
venience of access and egress for wagons, and all that, all
affecting the use of the property, and as we think, that
will appear to you to be self-evident and the damage

*prima facie* established; and then it will be for the opposition, if they can in any way show to you that there are any particular special benefits to this property apart from property generally and apart from the general travel. convenience which this property had a right to after the road was established."

Without objection, the jury viewed the premises; Brand's title was established by deed from Rice and right of plaintiffs to sue by their letters, etc.; copy of ordinance granting authority for construction of the railroad was put in evidence, and also street sketch showing outline and location of rails, supports, etc. Plaintiffs introduced a single witness, engaged in the real estate business, who had been agent for the property and collector of the rents since prior to the road's construction. He testified concerning the locality, the property, character of improvements, building of the road in 1896–7, operation, noise, dirt, obstruction to light, etc., resulting therefrom and the effect, the rents received, market conditions of lands in Chicago, the advance therein about 1898, etc. He declared the property's market value was $4800 per front foot before and for three years after the construction, and somewhat later increased to $6500. They also endeavored to prove by him values on Michigan Avenue to the east and on State Street to the west, but this was declared inadmissible. On defendants' motion the court directed a verdict of not guilty, stating the following reasons therefor: "Now I agree fully with your [counsel for plaintiffs] contention that the measure of damages is the difference in the value of the property in question with the structure and that without the structure. But how is that measured? What is the basis of measure of those damages? Why, it is the price before the construction and the price immediately afterwards. That is the readiest and most available test of determining whether or not there was damage. If there was testimony here that

without the structure it would be worth so much and with the construction it would be worth so much less, that would be another question from that which is pre-sented here. Your claim is not for depreciation of the value of the land by reason of the structure but because the structure has prevented its appreciation. It is not for deterioration of value but because the value has not advanced. Although the value has not advanced, it has not been proven by the evidence and there is no evidence tending to prove it did not advance by reason of the erection of this structure. *Non constat* that the structure was erected, there may have been many reasons that the value of the property did not advance and the only affirmative evidence in the case is that immediately before the erection of the structure, the price was so much and that for a period of some years afterwards, the price was so much. There is no evidence of depreciation at all. There is no evidence of right of appreciation which depended upon the erection of the structure and therefore I think you have not made out a case."

The judgment of the trial court was affirmed by both the Appellate Court (169 Ill. App. 449) and Supreme Court of Illinois (258 Illinois, 133). The latter in the course of its opinion said (p. 134): "Numerous errors were assigned in the Appellate Court, but counsel for appellants stated in his brief that all of them were withdrawn except those raising the question of the correct rule for assessing damages to property not taken but affected by a public use, and this is the only question discussed in the briefs in this court. . . . [p. 135] The undisputed evidence, therefore, was that the market value of appellants' property was not depreciated by the construction of the road. It is claimed, however, that this was the result of general benefits common to all property in the neighborhood served by the improvement, and that such benefits should not be considered in determining the dam-

ages; that only special benefits, such as are a direct phys-
ical improvement to the property, like the draining of
a wet, swampy tract of land by the improvement, or
building a bridge across a stream running through the
land, which enables the owner to enjoy it with greater
advantage by reason of the improvement, should be
considered in determining whether the property is dam-
aged.     Appellants contend that the benefits to their
property by reason of the improvement which operated
to prevent a decrease in its market value were general
benefits; that there were no special benefits, but, on the
contrary, the improvement injuriously affected the use
of appellants' property by obstructing air and light, by
noise and vibration, and by interference with access to
their property, and they insist they are entitled to recover
the damage thus resulting without any reference to the
other benefits that may have resulted from the improve-
ment.     This question is not a new one in this State.
Since the adoption of our present constitution [1870]
and the passage of the Eminent Domain act [1872] the
question has been passed upon by this court a great
many times. . . . In all three of these cases it was
held the true measure of compensation for land not taken
by the improvement was the difference between what
the property would have sold for unaffected by the im-
provement, and what it would sell for as affected by
it. . . . [p. 136] The rule announced in those cases
has, with one exception, been followed in subsequent
cases, down to *Metropolitan West Side Elevated Railway
Company* v. *Stickney* [1894], 150 Illinois, 362, . . .
[in which] "the court reviews all its previous decisions
since the adoption of the constitution of 1870 and sums
up its conclusions in the following language: 'It therefore
follows that every element arising from the construction
and operation of the railroad or other public improve-
ment which in an appreciable degree, capable of ascer-

tainment in dollars and cents, enters into the diminution or increase of the value of the particular property, is proper to be taken into consideration in determining whether there has been damage, and the extent of it.' . . . [p. 137] Appellants insist this decision and others in line with it are wrong; that the rule adopted in this State is contrary to the weight of authority in other States; . . . also, that the rule is in conflict with *Keithsburg and Eastern Railroad Company* v. *Henry,* 79 Illinois, 290, and § 9 of the Eminent Domain act. It is quite true, the decisions in this State upon the question here under consideration are not in harmony with decisions of courts of last resort in some of our sister States, while they are in harmony with the decisions in some States. The conflict between the decisions in this State and the decisions of other States relied upon by appellants is not so much as to a rule of law as it is to the application of the rule. This court is in accord with the cases in other States holding that only special benefits are to be considered in making just compensation for land damaged by but not taken for a public use. The difference is principally as to what are general benefits and what are special benefits. Some courts hold that only those benefits are special which directly and physically operate upon the particular property in a manner different from and not shared in common by other property in the neighborhood and which enable the owner to use it with greater advantage. All other benefits which increase the market value of the particular property in common with other property in the neighborhood are held to be general benefits. This view has not been adopted in this State. . . . [p. 139] The only case in this State that is out of line with the *Stickney Case* and those previously and subsequently decided is *Keithsburg and Eastern Railroad Company* v. *Henry, supra,* and that case has not been followed in any sub-

sequent decision. . . . [p. 141] We are not disposed now to enter upon a discussion of the correctness of the rule adhered to for forty years, nor do we feel at liberty, even if we were so inclined, to overrule the large number of decisions that would have to be overruled to justify a reversal of this judgment. The judgment is in harmony with the law in this State, and is therefore affirmed."

The Illinois constitution of 1870 provides—"Private property shall not be taken or damaged for public use without just compensation. Such compensation, when not made by the State, shall be ascertained by a jury, as shall be prescribed by law." The Eminent Domain Act of 1872, chap. 47, Rev. Stat. Ills. 1912, pp. 1099, 1101, provides—(Sec. 1) "That private property shall not be taken or damaged for public use without just compensation; and that in all cases in which compensation is not made by the State in its corporate capacity, such compensation shall be ascertained by a jury, as hereinafter prescribed." (Sec. 9) "Said jury shall . . . go upon the land sought to be taken or damaged, . . . and after hearing the proof offered make their report in writing, . . . so as to clearly set forth and show the compensation ascertained to each person thereto entitled; *Provided*, that no benefits or advantages which may accrue to lands or property affected shall be set off against or deducted from such compensation in any case."

Counsel delimit plaintiffs' present position thus:—

"Appellants withdraw all and every their assignments of error or parts thereof as will leave open upon this record this one question, and will save all their legal and constitutional rights claimed in respect thereto, viz: Assuming that the evidence adduced on the trial and shown in this record tended inevitably and only to show that the property in question was worth as much after the railroad in question had been constructed as before

it was constructed, or as much with the railroad constructed as without it, that the cause should still have gone to the jury. Or, differently worded: That in considering the effect upon the premises in question from the railroad structure in question, the jury must exclude from consideration the enhancement in value of the property in question, if any, resulting from the facilities furnished by the improvement."

The suit is for loss in market value consequent upon erection and operation of the elevated road and is now prosecuted upon the theory that the trial judge erred in not submitting questions of damage to the jury under positive instruction to exclude from market value subsequent to the construction such enhancement, if any, as resulted from facilities furnished by the improvement itself. It was, of course, necessary for the court to determine whether there was any evidence upon which such loss could be found. By merely viewing the property in 1909 the jury could not ascertain its market value either before or just after the road was built, and the only testimony relating thereto showed no change occurred. Neither could the jury tell without evidence what enhancement, if any, resulted from the improvement, and the record discloses none. In the circumstances we think the refusal to give positive direction to exclude from consideration something impossible of ascertainment was clearly right.

What we have said disposes of the essential point presented by the record, and it is unnecessary to consider the broad questions discussed in argument. It may not be contended upon any theory of compensation that the Constitution of the United States gave plaintiffs the right to an instruction not based on some evidence or to damages without proof. The judgment of the court below is

*Affirmed.*

Mr. Justice Day, dissenting.

I am unable to agree with the opinion of the court in this case. I think its importance justifies a brief statement of the grounds upon which my dissent rests.

In this case there was testimony tending to show that the plaintiffs' property suffered a real and substantial damage by the erection and maintenance of the elevated railroad, and that their property right of ingress and egress was peculiarly and particularly injured by the railroad structure. Such damage was equivalent to a taking of property for a public use and required just compensation to be made for the injury sustained. *Washington Ice Co.* v. *Chicago*, 147 Illinois, 327. There is no question of the real and substantial special injury to the plaintiffs' property, shown by the testimony, and undoubtedly developed by the view of the premises which the jury had under the direction of the court. In this attitude of the case, the jury was instructed that the plaintiff could not recover; the court proceeding upon the theory that there was no testimony tending to show that plaintiffs' property would not sell for as much after the construction of the road as before. The necessary effect of this instruction permitted the jury to consider appreciation in value arising from the general advantage of the structure, not only to the plaintiff, but to others of the public, similarly situated.

In the Supreme Court of Illinois this instruction was sustained upon the theory that the damages to the property might be offset by benefits to the owner although such benefits were shared by all others similarly situated.

This court has more than once held that to take private property for public use without adequate compensation is a deprivation of due process of law within the meaning of the Fourteenth Amendment to the Federal Constitution. *Chicago, Burlington & Quincy R. R.* v. *Chicago*, 166 U. S. 226; *Backus* v. *Fort Street Union Depot Co.*, 169

U. S. 557, 565. It has also held that just compensation, in the constitutional sense, excludes taking into account the supposed benefits that the owner may receive in common with the public from the use to which his property is appropriated. *Monongahela Nav. Co.* v. *United States,* 148 U. S. 312, 326.

Nor is it any answer to say that the proceedings in this case are in accordance with the laws of the State, in a proceeding in which the plaintiffs were allowed to appear and be heard, according to the rules of the local jurisdiction. This contention was made and met by this court in *Chicago, B. & Q. R. R.* v. *Chicago,* 166 U. S. 226, and this court has uniformly held that if the effect of the State's judgment was to permit the taking of property without due process of law, the form by which that result is accomplished is of no moment, and the mere form of the proceeding, even if accompanied by full opportunity to be heard, does not convert such process into due process of law, if the necessary result has been to deprive complainant of his property without just compensation. *Chicago, B. & Q. R. R.* v. *Chicago,* 166 U. S., p. 236, and the cases therein cited; *Fayerweather* v. *Ritch,* 195 U. S. 276, 297. If the effect of the judgment of the state court has been to take the property of the citizen without compensation, no matter what form the procedure has taken, it is violative of the Fourteenth Amendment to the Constitution. If this were not so, the State, by adopting forms of procedure and enforcing laws which operated to take private property without compensation, could deny the citizen the protection which the Fourteenth Amendment was intended to give against all forms of state action.

If the jury were permitted to pay the plaintiffs for their special damage in general benefits enjoyed by the public as well as the plaintiffs, the result is inevitable that the plaintiffs' property was taken without compensation. In

my view, the rule was correctly summarized by Justice Cartwright in his dissenting opinion in this case. In my opinion, he tersely and correctly stated the case in the following words:

"In this case damage was claimed to property by the occupation of a public street with an elevated railroad. There were two classes of rights in the street; the one, the public right to use the street for travel and for that only; the other, the right of the property owner of ingress and egress, use in connection with his property and the appurtenant easements. If there was an obstruction to the public use for travel by the iron pillars, there could be no recovery by the owner for consequent damage, but if his right of access was impeded or interfered with or his property rendered less valuable on account of noise, vibration or other natural consequence of the construction and maintenance of the road, the damage resulting was special to that property. The thing would be a nuisance if there were no authority of law for its construction and operation, and whenever an act is done which without statutory authority would be a nuisance, the owner of property affected by it sustains a special and peculiar damage different from that sustained by the public in general and may have his action for damages resulting from his individual and distinct right. (*Rigney* v. *City of Chicago*, 102 Illinois, 64.) In this case there was a direct physical disturbance of a right enjoyed in connection with the ownership of property, and if there was any damage by reason of the disturbance of the right it was special. Against any such damage general benefits to the public, although enhancing the value of the property in question in common with other property in the vicinity could not be considered. To say that the only test is the market value of the property before and after the improvement, regardless of the causes affecting the value, necessarily charges the owner with benefits which this court has re-

peatedly held could not be done, and makes the owner contribute to a liquidation of special injuries his share of the general benefits derived from the construction and operation of the road."

As the effect of the judgment below was to permit the plaintiffs to be paid for valuable property rights in general benefits, in my opinion it necessarily follows that plaintiffs' property was taken without due process of law, and therefore in violation of the protection afforded by the Fourteenth Amendment.

MR. JUSTICE McKENNA, MR. JUSTICE LAMAR and MR. JUSTICE PITNEY concur in this dissent.