# Romerus Paul v. The City of Detroit and another.

*Charter of Detroit: Alleys: Highways: Taking the fee of lands.* While section 27 of the charter of Detroit, as amended in 1869, in terms declares alleys to be highways, and considered by itself seems to contemplate the taking for alleys, not of the use only, but of the fee, yet the charter as a whole, though made incongruous by engrafting upon it inharmonious amendments for the purpose of carrying out a change of policy in regard to opening streets and alleys, is not open to the objection that it sanctions the taking of the absolute fee of lands for alleys, or makes highways of them when established.

*Alleys: Streets: Taking the fee: Necessity.* It can never be necessary to take a fee simple absolute for either alleys or streets.

*Alleys: Highways: Necessity: Streets.* An alley is not a highway in the proper sense of the term, but is no more than a way subject to a modified supervision, and liable to be used for drainage and other urban services, under municipal regulation, but intended for the convenience of adjacent property, and not for general travel or passage like streets; and the necessity for streets and for alleys cannot with any propriety be put on the same footing.

*Alleys: Proper uses: Streets.* The proper uses of alleys are quite as familiar as those of streets, so that the word "alley" may be said to have acquired a definite meaning.

*Eminent domain: Uses: Necessity: Highways.* The uses to which lands taken under the right of eminent domain for public purposes may lawfully be put, cannot exceed the measure of the necessity which is required to be found as the basis of the right to take at all; and lands thus taken cannot properly be converted into a highway, except when they have been taken for that purpose.

*Eminent domain: Necessity: Compensation: Judicial inquiry.* Under the limitations put by our constitution upon the right of eminent domain, the necessity of the use, and the compensation for the property taken, must be found by the jury, and no legislative or municipal authority can determine either; it is a purely judicial inquiry.

*Jury trial: Eminent domain: Constitutional safeguards.* All the safeguards ordinarily attaching to jury trials are implied in the use of the term "jury" in the constitutional provisions on this subject; and no action, by laws, or by proceedings under them, can be maintained if any of these securities are impaired or disregarded.

PAUL *v.* DETROIT.

*Alleys: Notice: Parties benefited.* In proceedings to take lands for alleys, notice to the persons liable to pay for the alley is just as essential as is notice to those whose lands are taken, and both have a right to be heard before the jury.

*Charter of Detroit: Opening alleys and streets: Notice: Public necessity.* The notice prescribed by the charter of Detroit, which recites that the council have determined to make the improvement and to take therefor such property as may be necessary, and of which the court is required to deliver a copy to the jury in connection with its instructions, is objectionable as leading the jury to infer that they are only required to inquire whether the land described is necessary for the alley, and not whether the alley is necessary.

*Opening alleys: City: Party litigant: Attorney: Jury.* In these proceedings the city is a mere party litigant, and its relations to the jury, and those of its attorney, should be governed by the principles which govern the like relations of any other party; and the provisions of this charter, requiring the city attorney to give the jury legal advice and counsel concerning their duties whenever requested, and to draw up their verdict in the form of a report for their signature when they have agreed on it, are a plain violation of the rule requiring juries to be absolutely free from the influence of any party, or the counsel of any party, on whose affairs they are to act.

*Charter of Detroit: Streets and alleys: Jury: Question of necessity.* The provision of this charter, which requires the jury, after having visited the place of the intended improvement, and gone "as near as may be practicable" to the property to be taken, to return at once to the court and first determine the necessity of the taking, and then, if they find in the affirmative, to hear the evidence, etc., is clearly improper, in that it requires the jury to determine the most important question in the case without proof or argument, and upon such examination only of the property as they see fit to make in the absence of any requirement to make any at all.

*Eminent domain: Questions of public necessity: Right to be heard fully.* The question of necessity, being the very foundation of the right to take private property at all, is one on which the parties have a full right to be heard, and to have the jury remain open to conviction and uncommitted, until they have been fully heard.

*Jury: Single verdict: Question of necessity.* Moreover, a jury can render but one verdict, and that only when the whole inquiry before them is ended; and they cannot, therefore, determine the necessity by itself; it depends on the other facts, as well as on the question of convenience.

*Eminent domain: Compensation: Damages: Benefits: Necessity.* The owner of the property taken is entitled to full compensation, and where the damages are to be charged on property according to its benefits, no property can lawfully be charged with more than its benefits; and if the aggregate benefits do not equal the cost, this disproves the necessity and ends the inquiry.

*Heard April 23 and 27. Decided June 8.*

Appeal in Chancery from Superior Court of Detroit.

*Otto Kirchner* and *F. A. Baker*, for complainant.

*F. G. Russell*, City Attorney, and *D. C. Holbrook*, City Counselor, for defendants.

CAMPBELL, J:

The bill in this cause was filed to restrain proceedings. for opening an alley across lands of complainant, whereby it was laid out through a building on those lands.    The proceedings are attacked as void, both for want of jurisdiction, and for defects in the 'charter of the city.

The charter of Detroit provides for the same action in regard to opening streets and alleys, except in the rare cases where the expense is all borne by the city.    The only difference now is, that in case of alleys the entire burden is thrown on the block through which it runs, or so much as is supposed by the jury to be benefited, while in other cases the district to be charged is designated by the common council.    The present rule concerning alleys was adopted in 1869, and that concerning the burdening of particular property for streets, in 1873.    Except as to the determination of benefits for these two purposes the proceedings are the same, under the charter amendments of 1869, for all seizures of land for public uses.

Before 1869 alleys could only be opened on the application of the owners of a majority of the property to be affected, and indemnity given to the city for all costs and liabilities, and before 1873, the city had to pay for land taken for streets, as being public, and not private benefits.    In changing these regulations so as to make both streets and alleys private charges, and yet allow the city to originate measures for opening both without consulting the parties interested or chargeable, the amendments have introduced remarkable and fundamental changes of policy, which do not entirely harmonize with the general frame of the charter, and which, if valid, require great care in their enforcement. Before considering those parts of the amended charter which relate to the procedure, it may be well to notice a preliminary question.    It is claimed that the charter declares all these alleys highways, and attempts to take, not the use only, but the fee of the land for them, and that this is

beyond any possible necessity.—*Sec. 27* of charter, as amended in 1869.

Such, no doubt, is the reading of *section 27*, and it is an instance of the carelessness and want of accuracy with which the charter has been made incongruous in many respects. But the language of one section cannot be allowed to destroy or confound the remainder.    It is perfectly evident that it can never be necessary to take a fee simple absolute for either alleys or streets.    But the omission of that provision will leave the lands taken subject to all public uses which are appropriate, and it may therefore be disregarded except as to such lands, if any, as require a fee to maintain public uses.    It is equally apparent that an alley is not a highway in the proper sense of the term, but is no more than a way subject to a modified supervision, and liable to be used for drainage and other urban services, under municipal regulation, but intended for the convenience of adjacent property, and not for general travel or passage like streets.    If put on the same footing with streets, it could seldom, if ever, be held competent to find such a necessity, when no such alley can be laid out until the small space through which it passes is already surrounded with streets.

It will be found that the charter contains identical provisions for taking lands for "highways, streets, avenues, lanes, alleys, public grounds or spaces,"—*Chap. 7, Sec. 1;* and that *section 27* declares all these alike highways, and declares the interest to be a fee.    But this enumeration contains not only different sorts of easements, but also uses entirely inconsistent with any general passage for highway purposes.    Grammatically the section means nothing, for it declares that "the same" shall become a public highway, when there has been no reference for several sections to the land at all.    It can have no consistent meaning, expect by confining the term "highway" to lands taken for that specific use.    The sentence together reads as follows: "Upon such payment, tender or deposit in the city treasury, the same shall become a public highway, and the common council may

enter upon, take possession of and convert the same to the uses and purposes for which it has been taken." It would be absurd to provide in one breath, that the land shall be devoted to a highway, and also to purposes inconsistent with a highway. It must be converted in all cases to its proper uses, whatever they may be, and to a highway only when it is taken for a highway. And an alley is expressly distinguished from a highway in the section *(sec. 1)* which enumerates the cases where land may be taken; while the proper uses of such a passage are quite as familiar as those of streets, so that the word "alley" has a definite meaning.—See *Tillman v. People, 12 Mich. R., 401; People v. Jackson, 7 Mich., 432; Jackson v. People, 9 Mich. R., 111.*

It is also to be noted that the provisions concerning alleys are in precise accordance with the section of the constitution relating to private roads.

*Article 18, section 14,* is as follows:

"The property of no person shall be taken for public use without just compensation therefor. Private roads may be opened in the manner to be prescribed by law; but in every case the necessities of the road, and the amount of all damage to be sustained by the opening thereof, shall be first determined by a jury of freeholders; and such amount, together with the expenses of proceedings, shall be paid by the person or persons to be benefited."

This is the only provision in the constitution that requires private benefits to be made the test of necessity, and compels private property to bear the whole burden of a way. Prior to 1869, as already mentioned, the city had no right to open an alley until it was asked for, nor until indemnity was given by the petitioners. In recasting chapter 7, for some reason not appearing on the face of the law, this requisition was removed, and the city now may take the initiative. But in all other respects the rule remains as before, that both damages and costs must be laid upon the property benefited within the block. As the legislature has confined the whole apportionment to a single block, and so

closely followed the constitution concerning private roads, we cannot attribute to them such a gross injustice as a design to make private parties bear the whole burden of general highways, nor the folly of opening short detached highways where they cannot be necessary. The alleys must be regarded as intended only for their legitimate uses as private easements, subject to appropriate municipal rules and burdens for the convenience of adjacent lots.

The main difference between these private conveniences and the ordinary public ways is, that where damages are to be paid by the public alone, the jury will not be required to apportion the damages and charges upon private property benefited. But in all cases, whether private property is to pay damages or not, the necessity of the use, and the compensation for the property taken, must be found by the jury, and no legislative or municipal authority can determine either. It is made by the constitution a purely judicial inquiry, to be made by a jury of twelve freeholders, and determined by their unbiassed and impartial verdict. And it is with reference to this constitutional requirement that the principal controversy is raised.

The constitution provides (*Art. 18, Sec. 2*) that "when private property is taken for the use and benefit of the public, the necessity for using such property, and the just compensation to be made therefor (except when to be made by the state) shall be ascertained by a jury of twelve freeholders, residing in the vicinity of such property," or by commissioners appointed by a court of record. An exception was afterwards made of highway commissioners. By *Art. 15, Sec. 15* it was declared that compensation should be determined by none but jurors, in cities and villages. It was held in *Horton v. Grand Haven, 24 Mich. R., 465,* recognizing and affirming *Campau v. Detroit, 14 Mich., 283,* and *People v. Brighton, 20 Mich. R., 69,* that these sections must be read together, and that in cities and villages the jury must determine the necessity as well as the compensation.

32 MICH.—15.

This provision is. not found in constitutions generally, and was never known in Michigan until the adoption of the constitution of 1851. Before that, neither jury nor commissioners had any duty to perform except assessing damages, and the prerogative of taking property on. their own estimate of its necessity was exercised by legislatures or those persons or corporations whom they allowed to act in the matter.

The change was made from a well founded belief, founded on experience, that private property was often taken improperly and without any necessity, and that. the pretense of public utility was often a cloak for private aggrandizement. Ways were forced through private property to enrich. the owners of other property, who were enabled by intrigues and sinister influences to induce municipal bodies to use the public authority to subserve their private schemes. The system was abused to the oppression of individuals by corruption and bargaining, and the sacredness of private property, and its immunity from any interference not required by actual public exigencies, ceased to be respected.

The constitution has changed this by requiring the whole subject to be determined by a jury of freeholders; so that each case shall be determined by a separate tribunal summoned expressly for the purpose, who must be unanimous in their views before any land can be taken; who must act openly and before all concerned, in hearing and receiving testimony; who cannot listen to private persuasion, and where any attempt to influence them will subject the offender to severe and disgraceful punishment. All these safeguards are implied in the use of the term "jury;" and no action, by laws, or by proceedings under them, can be maintained, if any of these securities are impaired or disregarded. The functions of juries and the requisites of legislation in these cases have been passed upon frequently, and are discussed in the following cases:—*Campau v. Detroit, 14 Mich. R:, 276 ; Duffield v. Detroit, 15 Mich. R., 474; Convers v. G. R. & I. R. R. Co., 18 Mich., 459 ; Peninsular R. W. Co. v. Howard, 20 Mich. R., 18 ; People v. Brighton, 20 Mich. R.,*

PAUL v. DETROIT.

*57; Specht v. Detroit, 20 Mich. R., 168; Chicago & M. L. S. R. R. Co. v. Sanford, 23 Mich. R., 418; Mansfield, etc., R. R. v. Clark, 23 Mich. R.; 519; G. R., N. & L. S. R. R. v. Van Driele, 24 Mich. R., 409; Horton v. Grand Haven, 24 Mich. R., 465; McClary v. Hartwell, 25 Mich. R., 139; Arnold v. Village of Decatur, 29 Mich., 77; Power's Appeal, 29 Mich. R., 504; Thunder Bay River Booming Co. v. Speechly, 31 Mich. R., 336; Kroop v. Forman, Drain Commissioner, 31 Mich. R., 144; Board of Education v. Detroit, 30 Mich. R., 505; Harbaugh v. Martin, 30 Mich. R., 234; Grand Rapids Booming Co. v. Jarvis, 30 Mich. R., 308.*

It has been made evident from many records brought to our notice that verdicts have often been rendered where juries cannot have fully understood their duties and functions. It would be unjust to lay these defaults to intentional misconduct. In most instances they have come from defects in the statutes, by which the change from the old system to the new has been overlooked or not clearly distinguished. In some cases the jury has been confounded with commissioners, and supposed to be authorized to act in a different way from other juries; as in *Chicago & M. L. S. R. R. v. Sanford, 23 Mich. R., 418,* where a verdict was not unanimous. The fact that the rules formerly existing here, and still in force elsewhere, vesting the discretion of passing upon necessity in other hands, are not applicable, has been disregarded, and statutes regulating the condemnation of lands are copied or patterned after laws belonging to a different system, or patched and interwoven with inconsistent and incongruous provisions, which render them obscure and ambiguous. It is not very strange that such legislation has led to difficulty. And there are some traces of this confusion in the charter before us. But we shall confine ourselves to those provisions which bear on this case.

The proceedings are in brief as follows: The common council having resolved that they deem the opening of an alley a "necessary public improvement," direct the city

attorney to apply to the recorder's court for a proper jury, and to give notice of the time of such application by publishing such notice four weeks, stating that "the common council have determined to make such improvement, describing it by metes and bounds, courses and distances, and to take therefor such private property within such limits as may be necessary," and that on the day named a jury will be applied for, "to determine the necessity for using said property, and the just compensation to be made therefor;" and also to apportion the compensation among the parties benefited.—*Ch. 7, §§ 1, 2, 3.*    Personal notice is to be given to owners and occupants of property "intended to be taken," if found, or notice posted on the premises.—*Sec. 3.* No notice is provided for to the parties on whom the burden is to be charged, and want of notice to any one is not to oust the jurisdiction.

We can only conjecture that this omission was accidental, as notice is just as necessary to the persons liable to pay for the alley, as to those whose lands are taken, and both have a right to be heard before the jury.

A similar provision as to the form of the notices and other proceedings was discussed in *Powers' Appeal,* and its ambiguity pointed out.    This notice is the only written instruction which the jury receive to guide them in their action, and when they are informed that the council have "determined to make such improvement," and "to take therefor such property as may be necessary," the inference is almost irresistible that they are only to inquire whether the land described is necessary for the alley, and not whether the alley is necessary.    This is the very evil intended to be avoided by the constitution, as explained in *People v. Brighton, 20 Mich. R., 57.*    This charter does not (as is done by the railroad law, and as was universally required at common law) prescribe a form of oath that will direct the attention of the jury to their duties.    They are simply sworn to discharge their duties, without defining them.—*Sec. 5.*    Provision is made for instruction by the court, and this, where

parties appear, can be put into proper shape for review *(Duffield v. Detroit)*, and will presumably be correct. But those who are brought in by constructive notice, and do not appear, have no means of knowing what view the jury have been directed to take. The law does not presume the jury will be able to guide themselves, and when it requires the court, in connection with its instructions, to deliver a copy of the notice *(sec. 5)*, it is to be presumed the jury in acting will pay special regard to the notice, and give respect to the opinion of the council, instead of entirely disregarding it, and judging for themselves whether the alley is needed, as they should.

In immediate connection with this appears a provision which is fatally objectionable. In these proceedings, as explained in *People v. Brighton,* and some of the other cases cited, the city of Detroit is a mere party litigant, and subject to all the conditions belonging to parties. If there is any one principle relating to juries which cannot safely be disregarded, it is the rule which requires them to be absolutely free from the influence of any party on whose affairs they are to act. The attorney stands in the same disability with the party, and no trial or hearing can be impartial where either party or counsel can exercise any function beyond what is done in open court in all controversies by the parties and their agents. This charter retains the old theory, that this proceeding is a city proceeding, and not a judicial one, and declares that the "city attorney shall give said jury legal advice and counsel concerning their duties whenever requested" *(Sec. 5);* and that when they have agreed on a verdict, he shall draw it up in the form of a report for their signature.—*Sec. 6.* This contemplates relations which are illegal and grossly improper, and which can only be explained on the idea that the jury is no jury, and is but a subordinate committee of the council. There may be cases where inquests are provisional, and not conclusive (as in the case of grand juries), where advice of counsel may be allowable to a certain extent. But there is no case of a jury

deciding upon rights finally, where such a course has ever been tolerated.    It is in violation of the simplest rules of justice, and amounts to *embracery.—Bacon's Ab.*, "*Jury*," *M. 3.*

There is also another equally fatal objection to the charter, arising, no doubt, from the same mistaken notion of the duties of a jury.

This charter requires that the jury when sworn, shall "go to the place of intended improvement and upon, or as near as may be practicable, to any property intended to be taken, and described in said notice, and after carefully inspecting the same shall return at once to the court, and first determine the necessity of making the improvement and of using the property intended to be taken therefor, and if they shall find in the affirmative, they shall in open court next hear all evidence and objections relating thereto, and determine and award," etc.

This clause requires the jury to make up their minds on the most important question in the case before hearing either proof or argument, and upon such examination of the property to be taken as they see fit to make, without even requiring any examination of the property to be charged. This question of necessity is the one on which the right to take private property at all entirely depends, and on which parties have a full right to be heard.    But this is not all. A jury can only render one verdict, and that can only be given when the whole inquiry before them is ended.    In cases like this they cannot determine the necessity by itself. It depends on the other facts, as well as on the question of convenience.

The owner of the property taken is entitled to receive full compensation for any damages done him.    The jury have no right, without forswearing themselves, to give him any less than just compensation.    If the damages are to be charged on property according to its benefits, that property cannot be charged with more than its benefits, and if the benefit does not equal the cost, that ends the inquiry.    It

PAUL *v.* DETROIT.

can never be legally necessary to take property unless the result of the taking is a benefit equal to the cost, and it can never be legal to compel an owner to receive less than just compensation. Until the jury determine, not only that the improvement is desirable, but that it is worth to the public or to the parties chargeable all they must severally pay to fully remunerate the owner, the necessity cannot be established, and the property cannot be lawfully taken.

These matters are all within the issue, and every person concerned has a right to have the jury remain open to conviction and uncommitted until he has been fully heard. The charter, by preventing this, renders the constitutional provision for a jury nugatory.

There are few provisions more necessary to protect private rights from invasion, and few that have been more frequently evaded. The courts are bound to enforce it fairly, and to carry out its intent. It is never difficult for any city to obtain all ways that are necessary, by doing justly, and in most cases the parties interested can obtain all the means of travel which they are entitled to ask, by paying their value. But it can never be just to take property under pretense of public benefit, which is not needed by the public, however much it may advance interests in which the public have no concern; and it can never be lawful to compel any man to give up his property, when it is not needed, or to lose it, whether needed or not, without being made whole. And on the other hand it is equally wrong to compel any one to bear charges for which he receives no equivalent. Any system may have its defects, but all of the constitutional rules must be preserved and enforced.

The complainant is entitled to a decree reversing the decree below and granting a perpetual injunction, with costs of both courts.

COOLEY, J., and GRAVES, CH. J., concurred.

Only three judges sat in this case.