HENDERSHOTT v. ROGERS.

1. EMINENT DOMAIN—INHERENT IN SOVEREIGNTY WITHOUT RECOGNITION IN CONSTITUTION — CONSTITUTIONAL LIMITATIONS CONTROLLING.

The power of eminent domain is inherent in sovereignty, and is therefore in the State without recognition in the Constitution, but its exercise is subject to any restrictions or limitations found therein.

[1]Eminent Domain, 20 C. J. §§ 2, 3.

2. SAME—NECESSITY A LEGISLATIVE QUESTION WHEN CONSTITU-
TION SILENT THEREON—COMPENSATION A JUDICIAL QUESTION.

Under constitutional provision requiring only that private
property may not be taken for public use without just
compensation, the question of compensation is a judicial
one, but the question of necessity is legislative and may
be delegated.

3. SAME—UNDER CONSTITUTION OF 1908 NECESSITY A JUDICIAL
QUESTION.

Under section 1, art. 13, Const. 1908, relating to the tak-
ing of private property for public use, the question of
necessity therefor, even when taken for highway purposes,
is a judicial one, in respect of which there should be due
process of law, notice thereof to the landowner, hearing,
and opportunity to defend.

4. CONSTITUTIONAL LAW—EMINENT DOMAIN—DUE PROCESS—HIGH-
WAYS AND STREETS—NECESSITY—STATUTES.

In so far as Act No. 352, Pub. Acts '1925, providing for
the condemnation of private property for public highway
purposes, denies to the landowner due process of law as
regards the question of the necessity for such taking, in
violation of section 1, art. 13, Const. 1908, it is uncon-
stitutional and void.

SNOW and FELLOWS, JJ., dissenting.

Appeal from Jackson; Parkinson (James A.), J.
Submitted June 29, 1926. (Docket No. 140.) De-
cided January 3, 1927.

Bill by Charles A. Hendershott against Frank F.
Rogers, State highway commissioner, to enjoin con-
demnation proceedings under Act No. 352, Pub. Acts
1925. From a decree dismissing the bill, plaintiff ap-
peals. Reversed, and decree entered for plaintiff.

*Elvin Swarthout,* for plaintiff.

*Andrew B. Dougherty,* Attorney General, and *H.
Victor Spike,* Assistant Attorney General, for defend-
ant.

[2]Eminent Domain, 20 C. J. §§ 111, 112; [3]Id., 20 C. J. §§ 111,
380; 4 L. R. A. (N. S.) 169; 22 L. R. A. (N. S.) 64; 10 R. C. L.
183, 186; 2 R. C. L. Supp. 988; 4 R. C. L. Supp. 657; 5 R. C. L.
Supp. 547; 6 R. C. L. Supp. 604, 605; [4]Id., 20 C. J. §§ 111, 313
(Anno); 6 R. C. L. 434; 2 R. C. L. Supp. 118.

CLARK, J.    To reduce a curve in State trunk line highway, M 50, in Jackson county, defendant, State highway commissioner, sought to take land of plaintiff pursuant to the provisions of Act No. 352, Pub. Acts 1925, entitled "An act to provide for the purchase and condemnation of private property for public highway purposes." Defendant determined conclusively the necessity of taking the property without giving the plaintiff notice of the purposed determination and without affording him thereon a hearing, an opportunity to defend, and in this regard defendant followed, substantially, the provisions of the act, and this feature of the act plaintiff contends is unconstitutional. There is no criticism of the machinery set up by the act for determining compensation and review thereof, but plaintiff insists that because of the peculiar language of the State Constitution, necessity, like compensation, is a judicial question and that it may not be determined without due process of law, giving the landowner notice, hearing, and opportunity to defend. Defendant's position is that necessity is legislative, that the legislature may find it, or may delegate the power, and, the question being legislative, the landowner is not entitled thereon to notice, hearing, or opportunity to defend. Plaintiff's bill for injunction was dismissed. He has appealed.

The power of eminent domain is inherent in sovereignty. It is in the State without recognition in the Constitution, but its exercise is subject to any restrictions or limitations found therein. *Loomis* v. *Hartz*, 165 Mich. 662.

It was said in. *Mississippi & Rum River Boom Co.* v. *Patterson*, 98 U. S. 403:

"The right of eminent domain, that is, the right to take private property for public uses, appertains to every independent government. It requires no constitutional recognition; it is an attribute of sovereignty. The clause found in the constitutions of the

several States providing for just compensation for property taken is a mere limitation upon the exercise of the right. When the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance. The property may be appropriated by an act of the legislature, or the power of appropriating it may be delegated to private corporations, to be exercised by them in the execution of works in which the public is interested. But notwithstanding the right is one that appertains to sovereignty, when the sovereign power attaches conditions to its exercise, the inquiry whether the conditions have been observed is a proper matter for judicial cognizance. If that inquiry take the form of a proceeding before the courts between parties,— the owners of the land on the one side, and the company seeking the appropriation on the other,—there is a controversy which is subject to the ordinary incidents of a civil suit, and its determination derogates in no respect from the sovereignty of the State."

The State Constitution of 1835 contained the following (Art. 1, § 19) :

"The property of no person shall be taken for public use without just compensation therefor."

This is substantially the language of the like provision of the 5th Amendment of the Federal Constitution, and of the constitutions of nearly all of the States. Such constitutional limitation of the exercise of the power of eminent domain relates to one matter, compensation. It offers no restriction respecting the determining of necessity of taking private property for public use. It is well settled that under such provision the question of compensation is judicial; but that the question of necessity is legislative and the legislature may determine it or it may delegate the power to do so. We quote from *Backus* v. *Union Depot Co.*, 169 U. S. 557 (18 Sup. Ct. 445) :

"In many States the question of necessity is never submitted to the jury which passes upon the question of compensation. It is either settled affirmatively by

the legislature, or left to the judgment of the corporation invested with the right to take property by condemnation. The question of necessity is not one of a judicial character, but rather one for determination by the lawmaking branch of the government."

If the quoted section of our Constitution of 1835 had persisted without modification to and in our last Constitution, that of 1908, this opinion might end here in affirmance of the decree. But important changes have been made and we consider them. We quote section 2, art. 18, as amended, State Constitution of 1850:

"When private property is taken for the use or benefit of the public, the necessity for using such property and the just compensation to be made therefor, except when to be made by the State, shall be ascertained by a jury of twelve freeholders, residing in the vicinity of such property, or by not less than three commissioners, appointed by a court of record, as shall be prescribed by law: *Provided*, The foregoing provision shall in no case be construed to apply to the action of commissioners of highways in the official discharge of their duty as highway commissioners."

And sections 1 and 2, art. 13, Const. of 1908:

"SECTION 1. Private property shall not be taken by the public nor by any corporation for public use, without the necessity therefor being first determined and just compensation therefor being first made or secured in such manner as shall be prescribed by law.

"SEC. 2. When private property is taken for the use or benefit of the public, the necessity for using such property and the just compensation to be made therefor, except when to be made by the State, shall be ascertained by a jury of twelve freeholders residing in the vicinity of such property, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law: *Provided*, That the foregoing provision shall not be construed to apply to the action of commissioners of highways or road commissioners in the official discharge of their duties."

Section 2, art. 18, as amended, Constitution of 1850, contained two exceptions, namely, when the condemning party was either the State or a highway commissioner. See following cases relative to the proviso of said section and referring also to other sections of said Constitution: *Campau* v. *City of Detroit,* 14 Mich. 276; *People* v. *Highway Commissioners,* 15 Mich. 346; *Paul* v. *City of Detroit,* 32 Mich. 108; *Truax* v. *Sterling,* 74 Mich. 160. But under such section including its proviso it was the duty of a highway commissioner to make determination of both necessity and compensation. *Truax* v. *Sterling, supra.*

But section 1, art. 13, of the Constitution of 1908 is all inclusive, has no exception, and imposes both of said restrictions of necessity and compensation in every case where it is sought to take private property for public use. Section 2, art. 13, of the Constitution of 1908 provides how necessity and compensation are to be determined, requires that it be done by a jury or by commissioners, except when the State, a highway commissioner, or a road commissioner is the condemning party. With these extensions and differences noted, it may be said that section 2, art. 18, Const. of 1850, and sections 1 and 2, art. 13, Const. of 1908, are in principle substantially the same. *Loomis* v. *Hartz, supra.*

For convenience we quote again the section from our Constitution of 1835:

"The property of no person shall be taken for public use without just compensation therefor."

The change in the later Constitutions from the provisions of the Constitution of 1835, here important, is, in substance, the addition of the words "without the necessity therefor being first determined." Defendant says that, notwithstanding the added words, the question of necessity remains purely legislative. If

so, why add the words at all? Under the provision of the Constitution, quoted above, of 1835, and like provisions in the Federal Constitution and in many State constitutions, it was well settled that necessity was a question for legislative determination. If the makers of our later Constitutions intended no change in that regard they would not have added the words. They did not intend an idle thing. They added the words to make necessity, like compensation, a judicial question, in respect of which there should be due process of law, notice thereof to the landowner, hearing, and opportunity to defend, as well upon the question of necessity as upon the question of compensation.

We quote from *Paul* v. *City of Detroit*, 32 Mich. 108:

"But in all cases, whether private property is to pay damages or not, the necessity of the use, and the compensation for the property taken, must be found by the jury, and no legislative or municipal authority can determine either. It is made by the Constitution a purely judicial inquiry, to be made by a jury of twelve freeholders, and determined by their unbiased and impartial verdict."

And see *People* v. *Village of Brighton*, 20 Mich. 57; *Ayers* v. *Richards*, 38 Mich. 214; *Campau* v. *City of Detroit*, 14 Mich. 276; *Horton* v. *City of Grand Haven*, 24 Mich. 465; *Village of Hamtramck* v. *Simons*, 201 Mich. 458.

We quote again Mr. Justice CAMPBELL in the *Paul Case:*

"This provision is not found in constitutions generally, and was never known in Michigan until the adoption of the Constitution of 1850. Before that, neither jury nor commissioners had any duty to perform except assessing damages, and the prerogative of taking property on their own estimate of its necessity was exercised by legislatures or those persons or corporations whom they allowed to act in the matter.

"The change was made from a well founded belief, founded on experience, that private property was often taken improperly and without any necessity, and that the pretense of public utility was often a cloak for private aggrandizement. Ways were forced through private property to enrich the owners of other property, who were enabled by intrigues and sinister influences to induce municipal bodies to use the public authority to subserve their private schemes. The system was abused to the oppression of individuals by corruption and bargaining, and the sacredness of private property, and its immunity from any interference not required by actual public exigencies, ceased to be respected."

The writer of the text in 20 C. J. pp. 624-626, recognizes that in Michigan the question of necessity is judicial, not legislative. We quote:

"In the absence of some constitutional or statutory provision to the contrary, where the use for which property is sought to be taken under the power of eminent domain is public, the necessity and expediency of exercising the power are political and not judicial questions. The legislative determination is conclusive and not reviewable by the courts. This power is unqualified, other than by the necessity of providing that compensation shall be made, and when the power has been delegated it is a subject of legislative discretion to determine what prudential regulations shall be established to secure a discreet and judicious exercise of the authority. So also the extent to which property shall be taken for public use rests wholly in the legislative discretion, subject to the limitation that due compensation be made. The legislature may determine the amount of land necessary to be taken and the location. It may designate the particular property to be condemned, and its determination in this respect cannot be reviewed by the courts. *Nevertheless, under some constitutional provisions, the question of necessity is a judicial one to be determined by the courts and not by the legislature.*"

To the words which we have italicized is a foot-note

citing many Michigan cases, some of which are cited above.

In 4 McQuillin on Municipal Corporations, § 1467, it is said:

"The question of necessity is distinct from the question of public use, and the former question is exclusively for the legislature, except that if the constitution or statute authorizes the taking of property only in cases of necessity then the necessity becomes a judicial question."

And, again, cases from Michigan are cited in a footnote.

In a note, 22 L. R. A. (N. S.) 69, the author, after reviewing decisions of many courts to the effect that the legislature is the judge of necessity and may determine the question without interference from the courts, says (we quote a part of the review of Michigan cases):

"All that has been said as to the judge of the necessity of appropriating private property to public use is predicated of the absence of interfering constitutional provisions. By the constitution, of course, the legislature itself may be shorn of its power to decide the question of necessity in exercising the right of eminent domain, and the power may be lodged with any tribunal or body. When such is the case, the decisions just cited will either not apply, or will be applicable only to a modified extent.

"The Constitution of Michigan, for example, explicitly requires (Art. 18, § 2) that, when private property is taken for the use or benefit of the public, the necessity for taking it shall be ascertained either by a jury or by commissioners appointed by a court of record. *Kundinger* v. *City of Saginaw*, 59 Mich. 355.

"The Michigan Constitution, it was said, in *Toledo, etc., R. Co.* v. *Dunlap*, 47 Mich. 456, allows proceedings to condemn land to be conducted by highway commissioners, in some cases, and by specially appointed commissioners or juries of freeholders, in others; and the inquiry in that State, as elsewhere, is an appraisal or

estimate of values, and not a contest on litigious rights, but it includes what is not elsewhere included, an inquiry into the necessity of the proposed taking for public purposes, which was never made by courts, but always heretofore by the legislature or some body, not judicial, of its creation. Had it not been for the specific provisions in the Michigan Constitution, the State could have provided for these inquiries to be made through any medium it chose to select.

"This provision, according to the court in *Paul* v. *City of Detroit*, 32 Mich. 108, is not found in constitutions generally, and was never known in Michigan until the adoption of the Constitution of 1850. Before that, neither jury nor commissioners had any duty to perform except assessing damages, and the prerogative of taking property on their own estimate of its necessity was exercised by legislatures, or those persons or corporations whom they allowed to act in the matter.

"The determination of the necessity of taking private property for the public use, it was said, in substance, by the court, in *Powers' Appeal*, 29 Mich. 504, has sometimes been allowed to be made by legislative or other public agencies. But the Michigan Constitution has taken away this power from all bodies except those indicated; and, in cases like the present (extension of city streets through private property), the fact of necessity must be found by the jury. The common council, instead of acting judicially or finally on the policy of opening a street over private property which they cannot obtain without adverse proceedings, become no more than petitioners, and the decision rests with the jury, and not with the city."

See 1 Elliott on Roads and Streets (4th Ed.), § 213.

Defendant argues that the last words of section 1, art. 13, "in such manner as shall be prescribed by law" ought to save the statute in question because it is the manner prescribed by law. May the legislature prescribe any manner? If it may treat necessity as a legislative question and deny to the landowner on that question notice, hearing, and opportunity to defend,

may it not treat the question of compensation in a like manner? And if such an act were passed and approved, could it be sustained because it was the "manner prescribed by law?" The words in question are restricted by the preceding language of the section. A statute providing for condemnation of private property for public use must give the landowner notice, hearing, and opportunity to defend on both questions, necessity and compensation.

The State highway commissioner is a highway or road commissioner, and because of the proviso of section 2, art. 13, of the Constitution, quoted above, he may condemn private property for public highway purposes without a jury or the commissioners required in the main part of said section, but any such proceeding taken by him must be in recognition of said section 1 of article 13, must treat both necessity and compensation as judicial questions, and must accord to the landowner on both questions due process of law. An approved definition of due process of law is law in its regular course of administration through the courts of justice. See *Weimer* v. *Bunbury,* 30 Mich. 201.

" 'Due process of law,' is not confined to judicial proceedings, but extends to every case which may deprive a citizen of life, liberty, or property, whether the proceeding be judicial, administrative, or executive in its nature. This great guaranty is always and everywhere present to protect the citizen against arbitrary interference with these sacred rights." 2 Lewis on Eminent Domain (3d Ed.), § 566.

"It is a fundamental principle of the common law that when a person is entitled to a hearing upon any question affecting his interests, he is entitled to notice of when the hearing is to take place, so that he may be given a reasonable opportunity to present his side of the question, and, when such a hearing is a constitutional right, notice of the hearing is essential to due

process of law." 2 Nichols on Eminent Domain (2d Ed.), § 336.

For many years in this State, an appeal to the township board from the action of a township highway commissioner in determining necessity and compensation for taking property for public highway purposes was permitted, and the decision of the board was made final, and this was sustained by the courts, although, as pointed out by Mr. Justice STONE in *Loomis* v. *Hartz, supra,* with citation of cases, the constitutionality of such statute, as regards due process of law, was neither raised nor considered.

Strictly speaking, with regard to judicial questions and under our present Constitution:

"Unless there is a tribunal of a judicial character, there cannot be due process of law under the 14th Amendment to the Federal Constitution, nor within the meaning of State constitutions when justly construed." * * * 1 Elliott on Roads and Streets (4th Ed.), § 315, note 16.

"A day in court is a matter of right in judicial proceedings." Mr. Justice COOLEY in *Weimer* v. *Bunbury, supra.*

Due process of law, "when used in relation to those (proceedings) of a *judicial* character, it is evidently, and has been so universally held, intended to secure to the citizen the right to a trial according to the forms of law of the questions of his liability and responsibility, before his person or his property shall be condemned. Judicial action is in such cases imperatively required, and 'implies and includes *actor, reus, judex*—regular allegations, opportunity to answer, and trial according to some settled course of judicial proceedings.'" *Parsons* v. *Russell,* 11 Mich. 113 (83 Am. Dec. 728).

See 20 C. J. p. 886.

"Thus an attempt by the legislature to authorize the performance of a judicial function by an administra-

tive board would result in depriving the persons affected by the orders of such board of their fundamental right to a hearing by a judicial tribunal and would thus not constitute due process of law."    2 Nichols on Eminent Domain (2d Ed.), § 329.

The State highway commissioner is authorized in the first instance to determine necessity and compensation, but at some stage of the proceeding an aggrieved landowner must be given his right to "his day in court."

That the proviso of section 2, art. 13, dispenses with a jury or the commissioners and permits in highway cases the commissioner to hear and determine the questions takes nothing from section 1 of art. 13.    He is bound by it as are all other condemning parties.    If our present Constitution had been silent on the question of necessity, if we still retained the provision of our Constitution of 1835, necessity would have been determined, practically, as it was in the case at bar. But under our present Constitution, an *ex parte* determination of necessity is as fruitless as would be an *ex parte* determination of compensation.

That this court held, long ago, that necessity was, in this State, a judicial, not a legislative, question, was not that the courts sought additional labors and powers, but that obedience to the mandate of a sovereign people expressed in their Constitution was imperative.    That the State highway commissioner may be hindered by this constitutional provision in his efforts to correct and improve public highways is a matter for the people themselves.    But it should be observed that the changes in our later Constitutions, from that of 1835 (above set forth), made by the people, were for the very purpose of increasing the rights of the landowner whose property it is proposed to take, and to the extent that the landowner's rights were increased, to that extent those who seek to take his property are hindered.

It follows that Act No. 352, Pub. Acts 1925, in so far as it denies to the landowner due process of law as regards the question of necessity, fails to accord to him on that question, notice, hearing, an opportunity to defend, is unconstitutional and void.     No other question requires discussion.

Decree reversed.     Plaintiff may have decree to be settled in the usual manner.     The question is one of public moment, so no costs are allowed.

SHARPE, C. J., and BIRD, STEERE, WIEST, and McDONALD, JJ., concurred with CLARK, J.

SNOW, J. (*dissenting*).     In recognition of the fact that an enormous need of the hour was highway construction, and realizing the necessity for a thoroughly workable law which would permit the speedy accomplishment of desired results, the legislature, in 1925, enacted .Act No. 352, entitled "An act to provide for the purchase and condemnation of private property for public highway purposes."     The law provides adequate means for judicial determination of compensation to be paid the owner, but when the State is concerned, it confers upon the State highway commissioner the final and unquestionable determination of the necessity for the improvement for which the land is desired.     Plaintiff, whose property was desired for the purpose of straightening a State highway, that it might be made more safe for public travel, refused to sell his land for such purpose.     Upon the State highway commissioner attempting to condemn under the provisions of the law in question, he sought the aid of the court to prevent proceedings under it, claiming that it was unconstitutional and void.     That question is now before us.

I do not agree with my Brother, Justice CLARK, that the legislature is denied the right by our Constitution to declare necessary a State public improvement,

or that section 1, art. 13, thereof makes the necessity for taking private property for public use a matter to be adjudicated by some sort of tribunal, invested with authority to determine the propriety of the State to exercise one of its inherent rights.    It is conceded by my Brother that under both of our Constitutions, prior to the adoption of the present one, the act under consideration would have been constitutional and valid. What he contends works havoc with it is the injecting into section 1, art. 13, the words "the necessity therefor being first determined," which he insists places compensation and necessity on the same footing.    No attention is paid to the claim of counsel for the plaintiff that the act is in conflict with the 5th Amendment to the Federal Constitution, containing the provision "nor shall private property be taken for public use without just compensation," since such amendment is but a restriction on the Federal government, and not on the State.    20 C. J. p. 532, and cases cited in the note.    I will therefore discuss what effect, if any, the section of our Constitution referred to has upon the law under consideration.

Compensation.    Because of the due-process clause in the 14th Amendment to the Federal Constitution, determination of compensation is *always* a judicial matter, involving the right of notice and opportunity to be heard.

"Wherever land is taken under the power of eminent domain it is necessary that the owner should have notice of the proceedings and an opportunity to appear and protect his rights, and to be heard on the question of compensation.    Where the landowner is denied a hearing upon the question of the right to compensation and the amount thereof, *this is a taking of his property without due process of law, within the constitutional prohibition.*    Notice is essential to the jurisdiction, and failure to give it renders the proceedings void.    *Even in the absence of any express requirement in the statute under which the proceedings are*

*had,* the property owners are entitled to notice and an opportunity to be heard." 20 C. J. pp. 927-929.

"A statute authorizing the taking of private property for public use must not only provide for the payment of compensation but also make provision for a certain and adequate remedy by which the compensation may be determined and by which the owner may procure the compensation. The legislature may provide for the assessment of compensation by a jury, a commission, or other body or tribunal, but a provision for an *ex parte* proceeding is insufficient." 20 C. J. pp. 649-651.

"The mode of procedure prescribed by statute must not destroy nor substantially impair the inherent right to compensation. Accordingly, the statute must provide a sufficient means or tribunal for determining the compensation, etc." 20 C. J. p. 875.

"The exercise of the power of eminent domain is subject to the constitutional right of the owner of the land taken to just compensation. This right is now expressly guaranteed by the constitutions of practically all the States, and even in the absence of such provisions in the organic law the right to compensation has been recognized by the courts as a fundamental right founded on natural justice, although there are statements in some decisions which would indicate an opinion to the contrary. Aside from this *the constitutional inhibition against deprivation of property without due process of law* requires the payment of compensation where private property is taken for public use." 20 C. J. pp. 643, 644, and cases cited.

"All that is essential is that in some appropriate way, before some properly constituted tribunal, inquiry shall be made as to the amount of compensation, and when this has been provided there is that due process of law which is required by Federal Constitution. *Bauman* v. *Ross,* 167 U. S. 548, 593 (17 Sup. Ct. 966)." *Backus* v. *Union Depot Co.,* 169 U. S. 557, 569 (18 Sup. Ct. 445).

It is also held that if adequate provision for compensation is provided by a law, that authority may be

237—Mich.—23.

granted to take possession pending inquiry as to the amount to be paid.    *Cherokee Nation* v. *Railway Co.,* 135 U. S. 641 (10 Sup. Ct. 965) ; *Sweet* v. *Rechel,* 159 U. S. 380 (16 Sup. Ct. 43).

No condemnation law would be valid, therefore, that did not provide some means for a judicial determination as to compensation.    This is not only true in Michigan, but in all of the other States as well. Not necessarily because of any State constitutional limitation, but in any event because of the due-process clause of the Federal Constitution.    It is not true in Michigan, however, because of section 1, art. 13, of the Constitution, which is the false premise upon which the opinion of my Brother is based.

Necessity.    Determination of necessity, on the other hand, is *never* a judicial matter, unless made so by the State Constitution.    Without State constitutional limitation, it is always for the legislature, or its delegated agent to ascertain.    *Backus* v. *Union Depot Co., supra; Mississippi & Rum River Boom Co.* v. *Patterson,* 98 U. S. 403, 406; *United States* v. *Jones,* 109 U. S. 513 (3 Sup. Ct. 346) ; *Cherokee Nation* v. *Railway Co., supra; Rindge Co.* v. *County of Los Angeles,* 262 U. S. 700 (43 Sup. Ct. 689) ; *Bragg* v. *Weaver,* 251 U. S. 57 (40 Sup. Ct. 62) ; *Joslin Manfg. Co.* v. *City of Providence,* 262 U. S. 668 (43 Sup. Ct. 684). See, also, *Monongahela Navigation Co.* v. *United States,* 148 U. S. 312, 327 (13 Sup. Ct. 622) ; *Seaboard Air Line R. Co.* v. *United States,* 261 U. S. 299 (43 Sup. Ct. 354) ; *Vogelstein & Co.* v. *United States,* 262 U. S. 337 (43 Sup. Ct. 564) ; *United States* v. *Collieries,* 262 U. S. 341 (43 Sup. Ct. 565) ; *Hays* v. *Port of Seattle,* 251 U. S. 233 (40 Sup. Ct. 125) ; *Cuyahoga River Power Co.* v. *City of Akron,* 240 U. S. 462 (36 Sup. Ct. 402) ; *Brand* v. *Railroad Co.,* 238 U. S. 586 (35 Sup. Ct. 846) ; *Long Island Water Supply Co.* v. *City of Brooklyn,* 166 U. S. 685, 694 (17 Sup. Ct. 718).

"The legislature, in providing for the power of eminent domain, may directly determine the necessity for appropriating private property for a particular improvement or public use, and it may select the exact location of the improvement. In such a case, it is well settled that the utility of the proposed improvement, the extent of the public necessity for its construction, the expediency of constructing it, the suitableness of the location selected and the consequent necessity of taking the land selected for its site, are all questions exclusively for the legislature to determine, and the courts have no power to interfere, or to substitute their own views for these of the representatives of the people." 10 R. C. L. p. 183, § 158, and a large number of cases cited in note.

"The expediency of constructing a particular public improvement and the extent of the public necessity therefore are clearly not judicial questions." *Id.* § 159.

"As an owner of land has no right to a judicial hearing on the necessity and expediency of a public improvement which will result in the taking of his land, or on the necessity and expediency of taking his land for the improvement, he has no constitutional right to notice of the proceedings in which it is decided to construct the improvement and its location is fixed, except in such States as, *by express constitutional provision,* make the necessity of taking a judicial question." *Id.* § 160.

"In the absence of some constitutional or statutory provision to the contrary, where the use for which property is sought to be taken under the power of eminent domain is public, the necessity and expediency of exercising the power are political and not judicial questions. The legislative determination is conclusive and not reviewable by the courts. This power is unqualified, other than that by the necessity of providing that compensation shall be made, and when the power has been delegated it is a subject of legislative discretion to determine what prudential regulations shall be established to secure a discreet and judicious exercise of the authority." 20 C. J. p. 624.

"In the absence of a constitutional provision on the

subject, the mode of exercising the right of eminent domain is within the discretion of the legislature, untrammeled by any limitation except that the purpose is a public one, and that just compensation be paid or tendered to the owner of the property taken, and the power to prescribe rules of procedure may be delegated.    It is not necessary for the legislature, in the exercise of the right of eminent domain, to invest the proceedings with the forms or substance of judicial process; the appropriation of the property is an act of public administration, and the form and manner of its performance is such as the legislature shall in its discretion prescribe."    20 C. J. p. 874.

"The procedure by which property is to be condemned and compensation assessed is not ordinarily prescribed by constitutional provisions.    This matter is usually left to the discretion of the legislature."    20 C. J. p. 875.

Thus we find, in the absence of State constitutional limitation or restriction, that, in all eminent domain proceedings, the determination of compensation is judicial, and the determination of necessity is legislative.

What is the situation in our State?    Until 1859, under our State Constitution of 1850, both necessity and compensation, in all cases, were matters for judicial determination.    In 1859 this limitation was changed by amendment, so as to exclude those proceedings wherein highway commissioners were concerned, and as thus amended it persisted up to the time of the adoption of the Constitution of 1908, into which it was injected by the use of substantially the same language, and it has so continued to the present time. Constitution of 1850, art. 18, § 2; Constitution of 1908, art. 13, § 2.

Therefore, in this State, excepting as to highway commissioners, necessity and compensation have always been, and now are, subjects for judicial determination, but only because of the constitutional provisions to which reference has just been made, and the due-

process clause of the Federal Constitution. Had not our Constitutions contained these limitations, necessity would have remained a matter for the legislature, although compensation would still have been a matter for judicial determination. But, as before suggested, compensation is not judicial for the erroneous reason which my Brother CLARK gives therefor, viz., because of section 1, art. 13, of our present Constitution, and its predecessors in our former ones. This section has never been declared or held to be a limitation in any way on the sovereign right of the exercise of eminent domain. As pointed out heretofore, compensation is always, in all jurisdictions, a matter for judicial determination in some manner, because of the due-process clause of the Federal Constitution.

If, therefore, section 1 of art. 13 did not, *in and of itself*, make the question of compensation one to be determined by a judicial tribunal, it follows that injecting into it by the Constitutional Convention of 1907 and 1908 a like reference as to necessity did not thereby make necessity a matter to be so determined.

Bearing in mind at all times that eminent domain exists in the State without recognition by the Constitution at all, in what respect does section 1 of art. 13 affect, restrict, or limit it? It is true it is limited by section 2, which provides that both necessity and just compensation must be ascertained by a jury of twelve freeholders, or by not less than three commissioners, excepting as to highway or road commissioners. But this act has to do with road commissioners, and is therefore within the exception. If affected then by the Constitution at all, it is by section 1, which does nothing more than limit the right to take private property to a prior determination of the necessity, and the making or securing of just compensation *in such manner as shall be prescribed by law.* The law prescribing the manner, however, must of

course be one which does not conflict with the due-process clause of the Federal Constitution. The law under consideration meets this requirement. It places determination of necessity in the hands of the State highway commissioner, which offends neither the due-process clause of the Federal Constitution nor any provision of the State Constitution. It provides for a hearing on the question of compensation, which is all the due-process clause insists upon.

Section 1 is no sort of constitutional inhibition of eminent domain. It does nothing more than to expressly leave to the legislature the right to prescribe a law for the manner of determining necessity and compensation. But my Brother asserts that it "is all inclusive, has no exception, and imposes both of said restrictions of necessity and compensation in every case where it is sought to take private property for public use."

If this section imposes "both · the restrictions of necessity and compensation," as suggested by my Brother, it imposes nothing that did not exist without it, and that, too, without the necessity of anywhere giving it expression. The whole idea of eminent domain presupposes a necessity for the improvement for which private property is desired, as well as the natural consequence of just compensation being paid.

Neither is section 1 "all inclusive," nor can it be said that it "has no exception." Section 2 expressly provides for the tribunal which is to determine both necessity and compensation in most cases, but makes an exception where the State is concerned and where the action is that of commissioners of highways or road commissioners in the official discharge of their duties. Section 1 of article 13 must be read and construed with section 2, and it may not be declared "all inclusive" or independent of it. See *Horton* v. *City of Grand Haven*, 24 Mich. 465; *Campau* v. *City of De-*

*troit,* 14 Mich. 283; *People* v. *Village of Brighton,* 20 Mich. 69.

In 12 C. J. p. 700, the rule is stated that

"The fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent of the framers and of the people who adopted it.   The court should therefore constantly keep in mind the object sought to be accomplished by its adoption, and the evils, if any, sought to be prevented or remedied."

If it had been the intent of the framers of our present Constitution to make all condemnation proceedings subject to notice and hearing on the question of necessity and compensation it would have been so expressly provided, and the exception with reference to highway commissioners contained in section 2 would have been eliminated.   But this exception was retained, and for the same reason that it was first injected in 1859, viz., to permit highway commissioners to condemn private property for highway purposes without the necessity of submitting to a jury or a commission the question of necessity therefor.   The retention of this exception, contained in section 2, distinctly and unmistakably indicates the intention of the Constitutional Convention of 1907 and 1908 to make no change.   Clearly, then, section 1 creates no limitation or prohibition, but, on the contrary, permits the legislature, subject to the restrictions contained in section 2, and the due-process clause, to provide the means and the manner of the exercise of the right of eminent domain.

The insertion by the Constitutional Convention into section 1 of article 13 of the words "without the necessity therefor being first determined" is convincing to my Brother of its intention "to make necessity like compensation a judicial question in respect of which there should be due process of law, notice thereof to the landowner, hearing," etc.   Why and how this

sentence became incorporated in our Constitution is, of course, not certain. I have examined with care the Journals and Debates of the Convention, but I am unable to find that any proposal was ever offered or introduced by any member aiming at any change in section 1. Neither does the Convention offer any explanation for the change in its submission and address to the people of the proposed Constitution. It was adopted without debate, and its verbiage must have been inspired, either in the committee on eminent domain (to which committee article 18 of the old Constitution was referred *in toto*) or in the committee on phraseology, which is the more probable. However that may be, it is a substitute for and designed to take the place of sections 9 and 15 of article 15 of the 1850 Constitution. See Debates of Const. Conv. 1907-1908, p. 1439.

My Brother further concludes:

"If the makers of our late Constitution intended no change in that regard they would not have added the words. * * * They added the words to make necessity, like compensation, a judicial question."

This conclusion of the Justice could not have been arrived at from anything said or done in the Constitutional Convention. There was no demand from any source to further limit the power of eminent domain. Road building was then in its infancy, but its impending necessity on a large scale must have been generally recognized, as well as the fact that officials ought not to be unnecessarily hampered in their work of construction. It is to me easily accounted that the words were inserted because necessity being as much a prerequisite of eminent domain as was compensation, it was considered that both, if either, should be mentioned. Had there been any idea in the mind of any member of the Convention that this section of the Constitution, in itself, would make

the question of necessity always a matter for trial, and had it been desired to put the subject of necessity in the same class with that of compensation, there would certainly have been proposals to this effect offered to the Convention, and, without doubt, discussion and debate upon the subject would have followed. Making the matter of necessity for a State highway a question to be determined by a court or some similar tribunal, with its appeals and delays, was, in my opinion, farthest from the minds of the members of the Convention.

For the reasons above stated, I am of the opinion that the act under consideration is not in conflict with any provision of the Constitution, and that it is valid.

The decree should be affirmed, but, as the question involved is a public one, no costs should be awarded.

FELLOWS, J., concurred with SNOW, J.