## MINNESOTA CANAL & POWER COMPANY v. FALL LAKE BOOM COMPANY and Others.[1]

August 7, 1894.

Nos. 18,544—(94).

**Eminent domain — exercise of the power.**

    1. The power of eminent domain rests exclusively in the legislature and can be exercised only as authorized by the legislature.

**Same — taking by public service corporation.**

    2. Under the statutes relating to public service corporations, it is the

[1] Reported in 148 N. W. 561.

duty of the court to determine, in each particular case, whether the taking of the designated property is necessary for the purposes of the proposed enterprise, and whether such property may lawfully be taken for such purposes.

**Same — diversion of water.**

3. Such corporations cannot divert water from the navigable streams of one drainage basin into those of another drainage basin, if such diversion will impair the navigability of the streams from which the water is proposed to be taken.

**Same — in aid of public use.**

4. Private property can be condemned only when it can be made to subserve some public use. If the purpose for which it is sought to take private property cannot be accomplished, such taking will not subserve public purposes, is not necessary within the meaning of the statute, and is unauthorized.

**Same — burden of proof.**

5. The burden of showing that such purpose can be accomplished is upon the petitioner.

**Same — finding sustained by evidence.**

6. The evidence justifies the conclusion of the trial court that the purpose of the proposed enterprise cannot be accomplished without impairing the navigability of the navigable waters of the Birch lake drainage basin.

Petition to the district court for Lake county for the appointment of commissioners to assess and determine the damages to be paid to the owners of certain lands necessary for the construction and maintenance of certain reservoirs and canals and the diversion of the waters of Birch lake and its tributaries into the valley of the St. Louis river and to the pipe lines and water wheels of petitioner's water power and electric plants at West Duluth. The petition was heard before Cant, J., who made findings and denied it. From the judgment entered pursuant to the order, petitioner appealed. Affirmed.

· *Tyler, Corneau & Eames* and *Butler & Mitchell,* for appellant.

*H. J. Grannis, J. N. Searles, J. A. P. Neal, Thomas J. Davis, Harris & Pearson, J. A. Wharton, Washburn, Bailey & Mitchell, Wilson G. Crosby, I. C. Buell,* and *Willson & Morgan,* for respondents.

TAYLOR, C.

The petitioner and appellant, the Minnesota Canal & Power Co., was first incorporated some 20 years ago. Its business as defined in its amended articles of incorporation, or charter, is to generate and distribute electricity for public use, to supply the public with water, and to improve navigation. To accomplish these purposes it is authorized by its charter to construct, maintain and operate dams, reservoirs, canals, power plants, transmission lines, and all other works and appliances necessary or convenient therefor; and to acquire by purchase, condemnation or otherwise, any and all property and rights in property necessary or convenient for carrying on its operations. The charter also provides that all things authorized therein and done thereunder shall be "for public use on equal terms and for a reasonable compensation, subject to the supervision and control of the state of Minnesota."

The company, in a petition filed in the district court of Lake county, states that, in order to accomplish the object for which it was organized, it desires to construct and maintain a continuous navigable waterway from Birch lake to West Duluth capable of floating logs, timber, canal boats, barges and other water craft; that, by means of such waterway, it proposes to furnish water for public use, and also to create and operate, at West Duluth, a waterpower for generating electricity for public use; and asks the court to determine that the prosecution of such enterprise and the taking of the property, easements and rights necessary for the prosecution of the same are required by the public interests, and to appoint commissioners to ascertain the damages that will be sustained by the several property owners by reason of the construction of the proposed improvements and the taking of the property, easements and rights necessary therefor. The extent and nature of the enterprise is indicated in the following excerpt from the findings of the trial court:

"That the waters of Birch lake, Birch river, north and south branches of the Kawishiwi river, White Iron lake, Garden lake, Farm lake and the connecting streams and waterways between Fall lake and Basswood lake are navigable waters of the state of Minnesota and of the United States; that all of said waters are tributary to

Basswood lake and flow thence into and along and form a part of the boundary waters between the United States and the Dominion of Canada, along the line from Lake Superior to the Lake of the Woods, and are discharged into the Lake of the Woods and thence north, through connecting streams and lakes, into Hudson Bay. * * *

"That the aforesaid waters, tributary to Basswood lake, are in what is known as the Birch lake drainage basin, the area of which basin is something more than 1,100 square miles; that between the Birch lake drainage basin and the St. Louis river drainage basin, to the south, is a height of land, forming a natural watershed. That the waters to the north of said height of land drain into said Birch lake drainage basin, and the waters to the south thereof drain into the St. Louis river drainage basin. That the plans and purposes of the petitioner contemplate the construction of a dam across Birch river, at the outlet of Birch lake to the north, of sufficient dimensions and so designed, as to raise the waters of Birch lake twenty feet above the mean low water level thereof, and by the aid thereof and of other dams and structures, to control and reservoir a considerable portion of the waters of said Birch lake drainage basin and by means of a canal cut through the said height of land, forming the watershed between said Birch lake drainage basin and said St. Louis River drainage basin, the petitioner proposes to divert water, impounded in said Birch lake, by the aforesaid means, through said canal and the Embarrass river, a tributary of the St. Louis river, into the St. Louis river and to take said waters from the St. Louis river, above the city of Cloquet and by means of a canal, some twenty-four miles in length, to deliver said waters, by appropriate appliances, at or in the vicinity of West Duluth, in said county of St. Louis, for the purpose of generating electrical power for public use, sale and distribution."

Two previous applications by this company to acquire substantially the same rights and privileges now in question have already been considered and determined by this court; and a more complete description of the purpose and scope of the enterprise will be found in the opinions in those cases. In the first case (Minnesota Canal

& Power Co. v. Koochiching Co. 97 Minn. 429, 107 N. W. 405, 5 L.R.A.(N.S.) 638, 7 Ann. Cas. 1182), the application was denied, upon the ground that such an enterprise was not authorized by the statutes then in force, and upon the further ground that the petition then before the court sought to take the property, in part, for private purposes. The Revised Laws of 1905 amended the statutes, and thereafter the company amended its articles of incorporation and filed a new petition. A motion to dismiss this second application was granted by the trial court, on the ground that the petition did not state facts sufficient to authorize taking the property sought for the purpose of the enterprise. On appeal this court held (Minnesota Canal & Power Co. v. Pratt, 101 Minn. 197, 112 N. W. 395, 11 L.R.A.(N.S.) 105), that the company, under this petition and its amended charter, was entitled to exercise the power of eminent domain conferred upon public service corporations; that the statutes as amended authorized the diversion of water from one drainage basin to another, if such diversion would not interfere with navigation and was not forbidden by some state or Federal law; that the laws of Minnesota prohibited any such diversion of water which would interfere with the rights of navigation or with other public uses to which the waters were already devoted; that, as the case was before the court as upon demurrer to the petition, the allegations therein must be treated as true in determining the questions then under consideration; that the laws of Minnesota did not forbid the construction of the proposed works, if the company could prove at the hearing the following allegations of its petition: "That your petitioner's said works and the diversion of water as proposed by your petitioner will not interfere with the navigable capacity of any of said waters and will not interfere with any navigation of which they are capable, and your petitioner's works can and will be so conducted as not to interfere with such navigation or any public use thereof, but, on the contrary, so as to aid and facilitate the same and so as to increase and improve the navigable capacity of said waters;" that the Federal laws prohibited the construction of such works without first obtaining a permit therefor from the Secretary of War; and that the petitioner was not entitled to prosecute its

enterprise, for the reason that it had failed to procure such permit. Thereafter the company procured such permit, inserted an allegation to that effect in its petition, and without any other substantial change therein, made the application now in question. After an extended hearing at which much evidence was taken, the trial court found against the petitioner on the facts and rendered judgment denying the application. The petitioner appealed.

The power of eminent domain rests exclusively in the legislature and can be exercised only as authorized by the legislature. The legislature has provided that a public service corporation may take property under this power, "if the proposed taking shall appear to be necessary and such as is authorized by law," and has imposed upon the courts the duty to determine these questions. G. S. 1913, §§ 6137, 6246, 5401. Although in all cases the propriety and expediency of condemning private property for public use is a purely legislative question, yet, under our statutes, it becomes the duty of the court to determine, in each particular case, whether the taking of the designated property is necessary for the purposes of the proposed enterprise, and whether such property may lawfully be taken for such purposes. In Re St. Paul & Northern Pacific Ry. Co. 34 Minn. 227, 25 N. W. 345; In re St. Paul & Northern Pacific Ry. Co. 37 Minn. 164, 33 N. W. 701; In re Minneapolis Railway Terminal Co. 38 Minn. 157, 36 N. W. 105; McGee v. Board of County Commrs. of Hennepin County, 84 Minn. 472, 88 N. W. 6; Minneapolis & St. L. R. Co. v. Village of Hartland, 85 Minn. 76, 88 N. W. 423; State v. Crosby, 92 Minn. 176, 99 N. W. 636. That analogous statutes devolve the determination of such questions upon the courts is held by the authorities generally. Portneuf Irrigating Co. v. Budge, 16 Idaho, 116, 100 Pac. 1046, 18 Ann. Cas. 674; Bigelow v. Draper, 6 N. D. 152, 69 N. W. 570; Town of Greenburg v. International Trust Co. 36 C. C. A. 471, 94 Fed. 755; Olmsted v. Proprietors of Morris Aqueduct, 46 N. J. Law, 495; Seattle & M. Ry. Co. v. State, 7 Wash. 150, 34 Pac. 551, 22 L.R.A. 217, 38 Am. St. 866; Rensselaer & S. R. Co. v. Davis, 43 N. Y. 137; Re New York Cent. Ry. Co. 66 N. Y. 407; City of Rome v. Whitestown Water Works Co. 113 App. Div. 547, 100 N. Y. Supp. 357; Wilmington

Canal & Reservoir Co. v. Dominguez, 50 Cal. 505; Spring Valley Waterworks v. Drinkhouse, 92 Cal. 528, 28 Pac. 621; City of Santa Ana v. Gildmacher, 133 Cal. 395, 65 Pac. 883; Sand Creek Lateral Irrigation Co. v. Davis, 17 Colo. 326, 29 Pac. 742; Montana Cent. Ry. Co. v. Helena & R. M. R. Co. 6 Mont. 416, 12 Pac. 916; Tracy v. Elizabethtown L. & B. S. R. Co. 80 Ky. 259; Riley v. Charleston Union Station Co. 71 S. C. 457, 51 S. E. 485, 110 Am. St. 579; Atlantic & B. R. Co. v. Penny, 119 Ga. 479, 46 S. E. 665; Stearns v. City of Barre, 73 Vt. 281, 50 Atl. 1086, 58 L.R.A. 240, 87 Am. St. 721; Jockheck v. Shawnee County, 53 Kan. 780, 37 Pac. 621.

That the petitioner possesses the power of eminent domain conferred upon public service corporations; that it seeks to take the property in question for public use; that its project involves diverting the water necessary therefor from navigable lakes and watercourses without ever returning it thereto; and that the laws of Minnesota forbid any diversion of such waters which will impair the present or future navigability of such lakes and watercourses, or which will interfere with any public use to which they are now devoted, has already been settled and determined, and such questions are not in controversy in this case. The principal controversy is whether the petitioner can carry out its enterprise without impairing the navigability of the streams from which the water for such enterprise would be diverted. The trial court found:

"That the waters of Birch lake, Birch river, north and south branches of the Kawishiwi river, White Iron lake, Garden lake, Farm lake and Fall lake, have, in the past, been used and are now being used for purposes of navigation and are capable of still greater use, in the future, for such purposes; that the aforesaid waters of Basswood lake and the boundary waters between the United States and the Dominion of Canada, to which the aforesaid waters in the state of Minnesota are tributary, have been in the past and are now used for navigation and are capable of still greater uses for navigation in the future. * * * That the plans and purposes of the petitioner contemplate, and, if carried out, would require the diversion of a large quantity of water from said Birch lake drainage

basin. That the aforesaid diversion by the petitioner from said Birch lake drainage basin of the quantity of water contemplated in its petition or of a quantity of water sufficient to develop or carry on the project of petitioner, or to make such project feasible or practicable, would substantially interfere with and impair the navigable capacity of the aforesaid navigable waters, and would substantially interfere with the navigation thereof; and that the diversion of the water contemplated by petitioner or of any substantial amount of water from said Birch lake drainage basin such as would be necessary to supply a canal or develop a waterpower project by diverting water from the Birch lake drainage basin into a canal connecting with the Embarrass and St. Louis rivers would substantially interfere with and impair the navigable capacity of the aforesaid navigable waters and the navigation thereof. That said substantial interference with and impairment of the navigable capacity of the aforesaid navigable waters and with the navigation thereof applies to the waters within the state of Minnesota and also to the aforesaid boundary waters between the United States and the Dominion of Canada, to which the said waters in the Birch lake drainage basin are tributary, and that such diversion of said waters from the Birch lake drainage basin would substantially interfere with and impair the uses of said waters, both while the said waters are in the state of Minnesota and when they become a part of said boundary waters for present and also future purposes of navigation. That the diversion of said waters of the Birch lake drainage basin by means of dams and reservoirs as contemplated in the petition herein and the taking of such waters into the Embarrass and St. Louis rivers would substantially and *pro tanto* impair the navigable capacity of those waters and the use for navigation by the citizens of both the United States and Dominion of Canada of the boundary waters in their natural flow." The petitioner claims to have avoided the effect of these findings by providing in its petition for the diversion of "such portion of the waters of the said Birch lake drainage basin as may be required to carry out the purposes of this corporation and the diversion of which will not interfere with the navigation, navigable capacity or public use of the waters of the

said Birch lake drainage basin and the various lakes and streams to which they are tributary."

It contends that, by reason of this provision in the petition, it can take only such quantity of water as may be taken without affecting the navigability of the streams from which the water is diverted; and that no question as to interference with navigation is involved in the case. It also contends that the question as to whether its enterprise will prove a business and financial success is not for the court to consider. While these contentions, in the main, are true, we cannot concede the conclusions drawn therefrom by the petitioner.

The petitioner desires to construct a navigable waterway perhaps 150 miles in length. The project contemplates the construction of a canal from the Birch lake drainage basin to the St. Louis river drainage basin, the improvement of the Embarrass and St. Louis rivers, and the construction of a canal from a point near Cloquet on the St. Louis river to Duluth. It also contemplates the construction of dams in the Birch lake drainage basin which will raise the waters of that lake 20 feet in height and will necessarily interfere with the works and property of the Fall Lake Boom Co. The present works of that company were constructed for the purpose of aiding navigation in the streams of this basin, and by means thereof it transports to mills and market large quantities of logs and timber each season. There are numerous waterpowers within this basin, and the Fall Lake Boom Co. and also other companies possess waterpowers therein, and are authorized by the statutes and by their charters to improve such powers and to generate electricity thereat for public use. It does not appear that any such use has yet been made of these waterpowers, but the construction of the petitioner's works will interfere with using them in the future for the purpose of creating power within this basin. We advert to these matters to show that extensive public interests are at least indirectly involved.

The basis of the petitioner's project and the first step toward accomplishing its purpose is the creation of a large reservoir in the Birch lake basin. Without such reservoir and the taking therefrom of sufficient water to operate its canal across the watershed, its purpose cannot be accomplished. According to its own figures, in

order to operate its proposed works to their full capacity, the petitioner will require three-fifths of all the water which naturally flows from the Birch lake drainage basin. It urges, however, that, if the taking of such quantity interferes with the navigable capacity of the streams affected, it will take only such lesser quantity as will not interfere therewith. To maintain and operate the proposed canal between the Birch lake drainage basin and the St. Louis river drainage basin so as to serve any public purpose will require a large and substantial quantity of water. The water for this purpose must all be drawn from the Birch lake basin. The trial court has found that no substantial quantity of water can be diverted from that basin without impairing the navigability of the waters therein. It necessarily follows that the proposed enterprise cannot be inaugurated and carried on without interfering with such navigability. But the petitioner insists that whether it will be able to obtain sufficient water to carry on its enterprise is of no concern to the courts; and that it has the right, at its option, to construct its works and to take the chances of obtaining sufficient water to operate them. We cannot accede to this proposition. The vast property rights involved can be condemned, under our statutes, only when they can be made to subserve some public use. Unless it appears that by acquiring the property in question the petitioner will be enabled to perform some public service, it has no right to take such property. The burden is upon the petitioner to show that the property is needed for and will serve a public purpose. Chicago, B. & N. R. Co. v. Porter, 43 Minn. 527, 46 N. W. 75; Minneapolis & St. L. R. Co. v. Village of Hartland, 85 Minn. 76, 88 N. W. 423. The duty to determine whether the property is to be taken for a public use, whether it is necessary therefor, and whether it may lawfully be taken for the purpose designated has been imposed upon the court. This necessarily includes the duty to determine whether the object of the proposed enterprise can be lawfully and efficiently accomplished. Whether the venture is likely to prove profitable or unprofitable is not the question. That question must be determined by the petitioner for itself. But, before the court can find that the property is being taken for and will be applied to a public use, it must find

that the purpose of the enterprise can be accomplished in the manner and through the means proposed. If the purpose of the enterprise cannot be accomplished, the taking of property therefor will not subserve public interests, and is not necessary for public purposes within the meaning of the statute. The statute does not authorize the exercise of the power of eminent domain unless it appears that the public purpose, for which alone property rights may be condemned, can be attained. McGee v. Board of Co. Commrs. of Hennepin County, 84 Minn. 472, 88 N. W. 6.

The right to lessen the navigable capacity of the streams of the Birch lake drainage basin has not been granted to the petitioner, and the statutes will not permit it to impair the navigability of such streams. The trial court has found, in effect, that the purpose of the proposed enterprise cannot be accomplished without impairing such navigability. The evidence justifies the conclusions drawn therefrom by the trial court, and it follows that the petitioner has no authority to take the property sought under the power of eminent domain.

The respondents raise several other objections to the prosecution of the proposed enterprise, but the conclusion reached upon the questions considered renders the determination of other questions unnecessary.

Judgment affirmed.