CHAMBERLIN v. DETROIT EDISON COMPANY

1. EMINENT DOMAIN—PUBLIC UTILITY CONDEMNATION STATUTE—CONSTITUTIONALITY—COURT RULES.

The public utility condemnation statute requiring that compensation for taking property for public use be determined by 3 commissioners, enacted at a time when commissioners decided questions of fact and law, although antithetical to the requirement of the present State Constitution that a proceeding for the determination of compensation for property taken for a public use follow a course appropriate for proceedings in a court of record, is not unconstitutional where such constitutional requirement has been conformed to by court rule requiring that the judge in all condemnation proceedings in courts of record, which include probate courts, shall preside over and instruct the jury or commissioners on questions of law and admissibility of evidence (Const 1963, art 10, § 2; GCR 1963, 516.5; CL 1948, § 486.251 et seq.).

2. SAME—PUBLIC UTILITY CONDEMNATION STATUTE—CONSTITUTIONALITY—TRIAL BY JURY.

The requirement of the public utility condemnation statute that the compensation for taking property for public use be determined by 3 commissioners is not unconstitutional as depriving property owners of a trial by jury, since there is no constitutional right to trial by jury in condemnation cases (CL 1948, 486.251 et seq.).

3. SAME—PUBLIC UTILITY CONDEMNATION STATUTE—CONSTITUTIONALITY—DETERMINATION OF NECESSITY—NON-JUDICIAL POWER.

Conferral on probate court of the power to determine the necessity for condemnation of private property by a public

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 27 Am Jur 2d, Eminent Domain §§ 407, 408.
[3] 26 Am Jur 2d, Eminent Domain § 112.
[4] 27 Am Jur 2d, Eminent Domain § 376.

utility with the aid of 3 commissioners is not unconstitutional as conferring upon courts legislative, non-judicial functions (CL 1948, § 486.251 *et seq.*, Const 1963, art 3, § 2).

4. Same—Public Utility Condemnation Statute—Constitutionality—Variation in Statutes as Denial of Equal Protection of Laws.

Condemnation statutes are not unconstitutional as depriving condemnees of equal protection of the law solely because the procedures of the various condemnation statutes differ.

Appeal from Macomb, Deneweth (George R.), J Submitted Division 1 October 3, 1967, at Lansing. (Docket No. 3,613.)     Decided December 2, 1968. Leave to appeal denied February 20, 1969.     381 Mich 804.

Complaint by Wallace G. Chamberlin, and others, against the Detroit Edison Company, a New York corporation, to restrain defendant from proceeding with an action pending in Macomb County Probate Court for the condemnation of certain property owned by plaintiff. Defendant's motion for summary judgment granted. Plaintiff appeals. Affirmed.

*Darden, Neef & Heitsch,* for plaintiff.

*Fischer, Sprague, Franklin & Ford (Richard Ford* and *Ralph N. Houghton, Jr.,* of counsel), for defendant.

Levin, J. Detroit Edison commenced condemnation proceedings in probate court pursuant to CL 1948, § 486.251 *et seq.* (Stat Ann § 22.1671, *et seq.*), hereafter the "public utility condemnation statute." Thereafter this action was filed by the plaintiffs who are owners of property sought to be so condemned. Plaintiffs claim the public utility condemnation statute violates provisions of Michigan's

1963 constitution and seek an injunction restraining Detroit Edison from continuing the probate court condemnation proceedings.

The 1908 constitution required that both necessity and just compensation be "ascertained by a jury of twelve freeholders residing in the vicinity of such property, or by not less than three commissioners appointed by a court of record, as shall be prescribed by law." Const 1908, art 13, § 2. Under the 1908 constitution the jury or commissioners were judges of the law and the facts, which led our courts to declare that condemnation proceedings were inquisitorial in nature. *In re Edward J. Jeffries Homes Housing Project (Appeal of Collins)* (1943), 306 Mich 638, 645; *State Board of Education* v. *von Zellen* (1965), 1 Mich App 147, 154.

All the 1908 constitutional provisions concerning the taking of private property for public use were replaced by 2 sentences in the 1963 constitution:

"Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record." Const 1963, art 10, § 2.

While the gist of the first sentence, "just compensation shall be paid," simply restated old State[1] and controlling Federal constitutional law,[2] important changes were made:

— There was eliminated the 1908 constitutional provision requiring that necessity and compensation be determined by a 12-man jury or 3 commissioners.

— Compensation must now be determined in a court of record.

---

[1] Const 1908, art 13, § 1.

[2] *Chicago, B. & Q. R. R. Co.* v. *City of Chicago* (1897), 166 US 226, 241 (17 S Ct 581, 41 L Ed 979, 986); *Dohany* v. *Rogers* (1930), 281 US 362 (50 S Ct 299, 74 L Ed 904, 910).

— There is no statement in the 1963 constitution regarding the manner in which necessity will be determined.

Plaintiffs assert that because of these changes in Michigan's constitution the public utility condemnation statute, which was enacted before these constitutional changes were made, is no longer constitutional.

Under the public utility condemnation statute 3 commissioners appointed by a probate judge determine necessity and compensation (CL 1948, § 486.252c). The statute was passed at a time when commissioners decided both questions of law and fact. However, the "court of record" provision in the 1963 constitution requires that proceedings for the determination of compensation follow a course appropriate for proceedings in a court of record. *State Highway Commissioner* v. *Lindow, In re FAI-75* (1966), 4 Mich App 496, 501. Plaintiffs are, therefore, entirely correct that the statute as and when passed contemplated a kind of proceeding inconsistent with the court of record requirement.

Recognizing the need to revise existing procedures, the Michigan Supreme Court sought to adapt the condemnation statutes in force at the time of adoption of the 1963 constitution to the new constitutional requirement. On November 3, 1964 (374 Mich xv) it revised GCR 1963, 516.5 to read:

"Judges of courts of record in which condemnation proceedings have been instituted shall *preside over the proceedings in person and shall instruct* the jury or commissioners on questions of law and admissibility of evidence."

But, say the plaintiffs, (a) the general court rules of 1963 do not apply to probate courts, (b) the procedure contemplated by the public utility condemna-

tion statute is inquisitorial rather than a "regular" judicial proceeding in a court of record, (c) the property owner is constitutionally entitled to a trial by jury, which right is not satisfied by a proceeding before 3 commissioners, (d) the determination of necessity is now "legislative," and the legislature may not constitutionally impose on the courts the nonjudicial, legislative function of determining necessity and (e) equal protection of the laws is denied by the public utility condemnation statute because the procedure established therein is unfavorable to property owners by comparison with the procedure which governs condemnation by other condemning authorities, for example the State highway department, in which latter case, various rights, including trial by jury, are guaranteed. CL 1948, § 213.361, *et seq.* as amended (Stat Ann 1958 Rev § 8.261(1), *et seq.* as amended).

For reasons about to be stated, we have concluded that the trial judge correctly denied the plaintiffs' relief and affirm the order dismissing their complaint.

The general court rules provide that "rules which are by their terms applicable to other courts shall apply to those courts." GCR 1963, 11.2. Thus, even though the general court rules do not generally apply to the probate court, a particular rule will so apply if by its terms it is made applicable to that court. The apparent reason for making GCR 1963, 516.5 applicable to "judges *of courts of record,*" not just to "judges," was to make that rule applicable to court of record judges other than circuit and recorder's judges. The probate court is a court of record. Const 1963, art 6, § 19. Rule 516.5 is applicable to condemnation proceedings in the probate court.

Although the public utility condemnation statute when enacted contemplated an inquisitorial proceeding antithetical to the court of record requirement established in the 1963 constitution, that aspect of the relevant statutory procedure was modified by the court rule which requires the judge in all condemnation proceedings, including, as we have held, those conducted by probate judges, to preside over and to instruct the jury or commissioners on questions of law and admissibility of evidence.

The court rule harmonizes procedures established in legislation adopted under the 1908 constitution with the 1963 constitution's court of record requirement. We see no reason why this cannot be done by judicial adaptation of the old to the new. We, therefore, reject plaintiffs' argument that until the legislature itself adjusts the old procedure to the new constitutional requirement, as it has now done for highway condemnation (PA 1967, No 206), but not as to public utility condemnation, there are no valid means by which private property can be condemned for public use.

In *United States Gypsum Co.* v. *Kent Circuit Judge* (1908), 150 Mich 668, 673, the Court declared that "proceedings to condemn land are special and summary in character and, while subject to judicial review and supervision for certain purposes, are not judicial proceedings." But in *Hendershott* v. *Rogers* (1927), 237 Mich 338, 348, the Court declared that the condemning authority "must treat both necessity and compensation as judicial questions." These 2 cases dealt with condemnation procedures under the 1850 and 1908 constitutions.

Plaintiffs cite the *United States Gypsum Co. Case* in support of their contention that procedures enacted prior to adoption of the 1963 constitution are not and cannot be judicial procedures. The defend-

ant relies on *Hendershott, supra,* and *Campau* v. *City of Detroit* (1923), 225 Mich 519, 523 (see footnote 3) as opposing authority.

Upon examination of the reports in the cited cases it appears that the statements in *Gypsum,* and in earlier and later cases, to the effect that condemnation proceedings are not judicial proceedings were made to explain why procedures generally applicable in judicial proceedings need not be followed in condemnation proceedings.[3]

*Hendershott* described condemnation proceedings as "judicial" to reconcile the maxim that the "question of compensation is judicial" with the then Michigan constitutional requirement that necessity be determined in the same manner as compensation. See *Hendershott, supra,* pp 341, 344. Describing Michigan's then procedure as *judicial* also served to distinguish our then procedure from that of most

---

[3] In the following cases the Michigan Supreme Court said condemnation proceedings were not judicial: *Michigan Gas Storage Company* v. *Gregory* (1954), 341 Mich 34, 37, and *United States Gypsum Co.* v. *Kent Circuit Judge, supra* (ordinary appeal procedures are not available to appeal an order or determination of the probate court in condemnation proceedings); *The Port Huron & S. W. R. Co.* v. *Voorheis* (1883), 50 Mich 506, 510 (concerning the scope of review); *Michigan, O. & I. R. Co.* v. *Monroe Circuit Judge* (1906), 144 Mich 44, 45 (a statute providing a means for changing venue does not apply to condemnation proceedings); *Toledo, A. A. & G. T. R. Co.* v. *Dunlap* (1882), 47 Mich 456, 462 (the inquisitorial function of the jury and specially appointed commissioners does not violate the constitutional provision which prevents conferring "such powers as are strictly judicial in their character" other than in certain courts which are named in the constitution itself).

But, the court characterized condemnation proceedings as judicial proceedings in holding that the property owner was entitled to interest at the rate of 5% from the date the court confirms the award. *Campau* v. *City of Detroit* (1923), 225 Mich 519, 523. And in *New Products Corporation* v. *State Highway Commissioner* (1958), 352 Mich 73, the Court repeated prior statements that proceedings for determining necessity are judicial in nature but, nevertheless, held that the validity of the procedure was not affected by the absence of provisions for the issuance of process to obtain the attendance of witnesses. Similarly, see *Ziegel* v. *Genesee County Board of Road Commissioners* (1927), 241 Mich 161, 164 (availability and method of judicial review).

other States which left to the *legislature* the decision on the manner in which necessity shall be determined.[4]

, Whether a particular condemnation procedure enacted under the 1850 and 1908 constitutions as modified by GCR 1963, 516.5 is consistent with the 1963 constitution's court of record requirement should be determined by comparing the procedure under attack with the court of record requirement and not by comparing it with judicial statements made in other contexts.

Plaintiffs advance one specific objection to the procedure established under the public utility condemnation statute. They assert that the property owner is entitled to a jury trial and that the determination of compensation by 3 commissioners is inconsistent with proceedings in a court of record.

The right of jury trial constitutionally protected by Const 1963, art 1, § 14, is the "right to a trial by jury as it had become known to the previous jurisprudence of the State." *Swart* v. *Kimball* (1880), 43 Mich 443, 448. See, also, *Conservation Department* v. *Brown* (1952), 335 Mich 343, 346. We doubt whether there ever was a right of trial by jury in a case such as this at common law which could "remain" when the constitution of 1835 and succeeding constitutions were adopted.[5]

The plaintiffs have not furnished us with any evidence that at common law there was a right to jury trial in proceedings for the taking or for the determination of compensation upon the taking of private property for public use. We find upon our own research, admittedly not exhaustive, that with

---

[4] See *Fitzsimons & Galvin, Inc.* v. *Rogers* (1928), 243 Mich 649, 657; *City of Allegan* v. *Vonasek* (1932), 261 Mich 16, 20, 21.

[5] See Const 1835, art 1, § 9; Const 1850, art 6, § 27; Const 1908, art 2, § 13; Const 1963, art 1, § 14.

the exception of one case, *Beatty* v. *United States* (CA 4, 1913), 203 F 620, the correctness of which was later questioned in *United States* v. *Hess* (CA 8, 1934), 71 F2d 78, 80, the authorities seem to be in agreement that at common law there was no right to a jury trial of the kind guaranteed in the Seventh Amendment and by Michigan's constitutional provisions.[6] The plaintiffs have failed to persuade us that the kind of jury trial the right to which is preserved by Const 1963, art 1, § 14, was known in condemnation cases when the right to jury trial was constitutionally guaranteed in this State.

The due process clause of the Fourteenth Amendment does not guarantee a common law jury trial in condemnation cases. *A. Backus, Jr. & Sons* v. *Fort Street Union Depot Co.* (1898), 169 US 557 (18 S Ct 445, 42 L Ed 853, 859).

The only jury trial in condemnation proceedings known to the jurisprudence of this State of which we have been made aware is the special jury trial provided for under the 1850 and 1908 constitutions. Entirely apart from the fact that the 1850 and 1908 jury trial provisions are not contained in the 1963 constitution, one of the reasons for adding the second sentence containing the court of record requirement to the 1963 constitutional provision concerning eminent domain was to do away with the kind of jury trial provided for in the 1850 and 1908 consti-

---

[6] 1 Nichols on Eminent Domain (3d ed), § 4.105[1], p 512, § 4.105 [3], pp 518, 519; *Kohl* v. *United States* (1876), 91 US 367 (23 L Ed 449, 452); *Bauman* v. *Ross* (1897), 167 US 548, 593 (17 S Ct 966, 983, 42 L Ed 270, 289); *Gila River Ranch, Inc.* v. *United States* (CA9, 1966), 368 F2d 354; *United States* v. *Buhler* (CA5, 1958), 254 F2d 876; *Moore Mill & Lumber Company* v. *Foster* (1959), 216 Or 204 (336 P2d 39, 49); *State by the State Road Commission of West Virginia* v. *Boggess* (1962), 147 W Va 98 (126 SE2d 26, 29). See, also, Comment, Relation of judge and jury in Michigan condemnation proceedings, 58 Mich L Rev 248, 250 (1959), for a review of the use of jury commissioners and other triers in Michigan condemnation proceedings both before and after the adoption of the 1850 constitution.

tutions. No longer were jurors to be the judges of
the law and the facts. No longer was the inquiry
to be inquisitional. Henceforth, the inquiry was to
be in a court of record and not by the kind of jury
provided for in the 1850 and 1908 constitutions.

It is also to be noted that under the 1850[7] and
1908 constitutions there was no absolute right to a
12-man jury trial since both those constitutions ex-
pressly provided for proceedings before 3-man com-
missions.

Most importantly, upon examination of the official
record of the 1961 constitutional convention[8] it ap-
pears that the sponsors of the second sentence which
added the court of record requirement represented
to the members of the convention that legislation
allowing the determination of just compensation to
be made by commissioners in a court-of-record pro-
ceeding would be valid. The original committee
proposal submitted to the convention would have
prohibited the further use of commissioners. This
was decisively defeated after much floor debate.
The court-of-record provision was added only after
assurances on the floor from its sponsors that the
adoption of this requirement would not prevent the
legislature from allowing the continued use of 3
commissioners.[9]

---

7 Const 1850, art 18, § 2, as amended.

8 "Courts on numerous occasions have gone to the constitutional
convention debates and addresses to the people to decide the meaning
of the Constitution." *Burdick* v. *Secretary of State* (1964), 373
Mich 578, 584.

The 1963 constitution was adopted by a vote of the people April 1,
1963, after its adoption August 1, 1962, by the constitutional con-
vention of 1961.

9 "The legislature can provide for a 3 man commission under the
Lawrence amendment, but the commission would have to operate in
a court; that is, under the supervision of a judge." 2 Official Record,
Constitutional Convention 1961, p 3152.

For the original committee proposal, see p 2580. An amendment
thereto was offered directing that necessity and just compensation
be determined in such manner as shall be "prescribed by law"; the
amendment provided that compensation be determined by 12 free-

The express reference to "commissioners" in revised rule 516.5, which rule was revised by the Michigan Supreme Court to conform existing statutory procedures to the court-of-record requirement, suggests that our Supreme Court regards their continued use as constitutional.

To decide this case we do not have to determine the precise boundary lines of what constitutes a court-of-record proceeding. The *von Zellen* and *Lindow Cases* hold that the kind of proceeding contemplated was one having the general characteristics of "judicial" proceedings in a court of record. The only challenge to the public utility condemnation statute advanced by the plaintiffs is the claim that a proceeding cannot be a court-of-record proceeding if the disputed issues are decided by 3 commissioners, that nothing other than resolution of the disputed issues by a 12-man jury selected in the manner in which common law juries are selected will satisfy the new requirement. We have rejected that contention. In doing so we do not mean to be understood as saying that all features of the procedures under the public utility condemnation statute or any other presently enacted condemnation statute are consistent with proceedings in a court of record.

Plaintiffs point out that with the repeal of the former constitutional provision which provided for the manner of determining both necessity and com-

holders or 3 commissioners as "prescribed by law." (p 2582). The amendment was adopted (p 2602) after the defeat of a proposal that would have eliminated the use of commissioners (pp 2596, 2597). Another proposal which, among other things, would have eliminated the use of commissioners was also defeated (pp 2843–2845). The first sentence of the present constitutional provision was adopted in lieu of the earlier adopted language (pp 2846, 2847). The substance of the second sentence of the present constitutional provision was then adopted (pp 3151, 3152). Style changes were made and the second sentence took its present form and was adopted (pp 3233, 3238, 3243, 3244).

pensation, the determination of necessity became, as it has been for some time in most of the other States, a "legislative" matter. From this they argue that the statute as modified by the court rule is unconstitutional in that it directs that necessity, a "legislative" matter, be determined under judicial supervision in a constitutionally established court.[10] This, say the plaintiffs, unconstitutionally confers upon the probate court a nonjudicial duty. See Const 1963, art 3, § 2. While it is true that the legislature now has the power to decide the manner in which necessity shall be determined, it does not follow that conferral upon courts of the duty of determining necessity imposes upon them a legislative, nonjudicial duty.

Whether a function is nonjudicial, for purposes of the separation of powers principle, often will depend on the manner in which it is expected to be discharged. If the court is to determine necessity as it would any other disputed issue, according to procedures and standards known to the law, then the court functions as a court even though its power to act derives from legislation. Legislatures are ever creating new rights and duties. Some are enforced administratively, others by courts.

In most cases, as long as the court can function as a court in deciding the question, receiving and applying factual testimony against identifiable standards, laws and rules of law, the function conferred will not be regarded as nonjudicial. The procedure under the public utility condemnation statute, as amended by GCR 1963, 516.5, follows the

---

[10] Now that the decision as to the manner in which necessity shall be determined has been again lodged in the legislature, the exercise of power to determine necessity by such nonjudicial personages and agencies, as the legislature may authorize to make such determinations, will not necessarily be free from all judicial review. 27 Am Jur 2d, Eminent Domain, § 404.

adversary form customary in common law courts.
Under this statute as so amended the probate court
is required to function as a court in adjudicating
the controverted issue of necessity. The decision of
the probate court is final subject to review only by
the appellate courts. We have concluded that the
conferral upon the probate court of the duty to de-
termine necessity with the aid of 3 commissioners
does not unconstitutionally infringe on the judicial
function.[11]

We also note that the framers of the 1963 con-
stitution intended to permit the legislature to invest
the decision of both necessity and compensation in
a court of record.[12]

Nor does a variance among the various condem-
nation statutes as to the procedures to be followed
by the several condemning authorities necessarily
mean that equal protection of the law has been de-
nied. Decision on this issue is controlled by *Dohany*
v. *Rogers* (1930), 281 US 362 (50 S Ct 299, 74 L Ed
904, 912). In that case the United States Supreme
Court held that equal protection of the laws was
not denied by a Michigan condemnation statute
which withheld rights and privileges, including the
right to trial by jury, provided for in another Mich-

---

[11] Holding that the separation of powers doctrine does not prevent
the legislature from conferring upon a court the function of deter-
mining necessity are *Town of Greenburg* v. *International Trust Co.*
(CA 2, 1899), 94 F 755, and *Citizens' Savings Bank* v. *Town of
Greenburgh* (1903), 173 NY 215 (65 NE 978). Reaching the same
result without discussion of the issue are *Stanpark Realty Corporation*
v. *City of Norfolk* (1958), 199 Va 716 (101 SE2d 527); *Minnesota
Canal & Power Co.* v. *Fall Lake Boom Co.* (1914), 127 Minn 23 (148
NW 561); *Peavy-Wilson Lumber Company* v. *Brevard County* (1947),
159 Fla 311 (31 So 2d 483, 172 ALR 168). See, also, *Sears* v. *Akron*
(1918), 246 US 242, 251 (38 S Ct 245, 249; 62 L Ed 688, 698)
(dictum); 1 Nichols on Eminent Domain (3d ed), § 411[4], p 585;
11 McQuillin, Municipal Corporations (3d ed), Rev § 32.24, pp 314-
320.

[12] 2 Official Record, Constitutional Convention 1961, pp 2831, 2838,
2846, 3151.

igan condemnation statute.[13]   Similarly, see *Port of New York Authority* v. *Heming* (1961), 34 NJ 144 (167 A2d 609, 618).[14]

Affirmed.   Costs to appellee.

## McGREGOR, P. J., and QUINN, J., concurred.

[13] The rights and privileges withheld in the condemnation statute under attack in *Dohany* v. *Rogers, supra,* conferred under the other condemnation statute with which it was compared were (p 365): "(a) the right to possession of his property until damages have been finally assessed and paid; (b) the right to consequential damages for diminution in value of any part of the tract not taken; (c) the right to damages without deduction of benefits accruing from the construction of the railroad; (d) the right to attorneys' fees and expenses in addition to damages; (e) the right to trial by jury; and (f) the right to review by appeal instead of by certiorari.   Other differences are of less importance."

[14] It appears upon examination of the official record of the 1961 constitutional convention (see footnote 9) that the members of the convention whose views prevailed intended that the legislature could use juries or commissioners as it chose.   There is no reason to believe that it was intended that once the legislature decided to provide for the use of juries in the case of one condemning authority that it was obliged to use juries in all other cases to the exclusion of any further use of commissioners.   Court rule 516.5 in terms proceeds on the assumption that both juries and commissioners will continue to be used.