**REGENTS OF the UNIVERSITY OF MINNESOTA, a Public Body Established by the Laws of Minnesota and Charter, Petitioners, Appellants,**

v.

**CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, n/k/a Chicago and North Western Railway Company, a Delaware Corporation, Respondent,**

**Chemical Bank, a New York Banking Corporation, Northern States Power Company, Defendants,**

**CSM Investors, Inc., Minneapolis Community Development Agency, Respondents.**

No. C6–96–583.

Court of Appeals of Minnesota.

Aug. 27, 1996.

Review Denied Nov. 20, 1996.

Richard G. Mark, Scott G. Knudson, Briggs and Morgan, P.A., Minneapolis, for Petitioners, Appellants.

David A. Allgeyer, Sara D. Halvorson, Ann K. Grossman, Lindquist & Vennum, Minneapolis, for Respondent Chicago & North Western Transportation Company.

Robert J. Tansey, Jr., David E. Oslund, Mark D. Wisser, Robins, Kaplan, Miller & Ciresi, Minneapolis, for Respondent CSM Investors, Inc.

Robert J. Lindall, John M. LeFevre, Jr., Joe Y. Yang, Kennedy & Graven, Chartered, Minneapolis, for Respondent Minneapolis Community Development Agency.

Harold J. Bagley, Minneapolis, for Defendant Northern States Power Company.

Considered and decided by WILLIS, P.J., and PETERSON and THOREEN, JJ.

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

## OPINION

JOHN F. THOREEN, Judge.*

Appellants challenge the trial court's dismissal of a petition by the University of Minnesota (the University) to acquire property by eminent domain. Because the trial court did not clearly err in determining that appellants failed to show the requisite necessity for condemning the property, we affirm.

## FACTS

The property at issue in this case consists of approximately 30 acres of land located to the northeast of the East Bank campus of the University of Minnesota in Minneapolis.

The University of Minnesota claims to have been interested in acquiring the property since 1992 after learning from a representative of the Chicago & North Western Railway Company (the Railroad), which then owned the property, that the Railroad was planning to vacate the property in the near future. On several occasions in the subsequent two or three years, representatives from the University and the Railroad discussed the property. The Railroad kept the University apprised of the status of the property's availability during this time. The parties also exchanged ideas about possible methods for the environmental remediation of the property which had become contaminated with oil during the years that it was used as a railroad facility.

The University has considered several possible, mutually exclusive uses for the land, including student housing, women's athletic facilities, and a new steam plant. The Regents have not yet approved a single project for the property, allegedly due in part to the uncertainty arising out of the parties' disagreement over how to address the environmental contamination problems on the property.

In October 1994, after the University had obtained two appraisals of the Railroad's property, the University became aware that the Railroad had received a purchase offer

pointment pursuant to Minn. Const. art. VI, § 10.

from another party. The following month the University extended a concrete offer of its own to purchase the property. In early 1995, the University learned that the Railroad had rejected its offer and had accepted an offer from CSM Investments, Inc. (CSM) to purchase the property. CSM intends to use the property for business-related purposes in the hope of promoting economic activity in the area. The Minneapolis Community Development Agency (MCDA) supports CSM's proposal, as one part of a larger plan to revitalize the area (South East Minneapolis Industrial (SEMI) district), which the MCDA classifies as blighted property.

The University filed a petition to acquire the property by eminent domain in April 1995. After conducting an evidentiary hearing, the trial court dismissed the petition, concluding in part that the proposed condemnation was not "necessary," due to the University's failure to articulate a purpose for which it intended to use the property. This appeal followed.

## ISSUE

Did the trial court clearly err in determining that appellants had not demonstrated the requisite level of necessity for the taking of property by eminent domain where they failed to establish that they intended to use the property for an identifiable purpose within a reasonable period of time?

## ANALYSIS

■ A court may properly deny a petition for condemnation where the proposed condemnor's actions are manifestly arbitrary or unreasonable. *Housing & Redev. Auth. v. Minneapolis Metro. Co.*, 259 Minn. 1, 15, 104 N.W.2d 864, 874 (1960). A condemning authority acts in an arbitrary and unreasonable manner when it acts "capriciously, irrationally, and without basis in law or under conditions which do not authorize or permit the exercise of the asserted power." *Id.* (citations omitted).

■ In order to approve a petition for the acquisition of property by eminent domain, the trial court must determine whether the proposed taking "appear[s] to be neces-

sary." Minn.Stat. § 117.075 (1994); *cf. Northern States Power Co. v. Oslund*, 236 Minn. 135, 137, 51 N.W.2d 808, 809 (1952) ("The foundation[al] idea upon which the right of eminent domain rests is public necessity."). "Necessity" in this context "means now or in the near future." *State ex rel. City of Duluth v. Duluth Street Ry.*, 179 Minn. 548, 551, 229 N.W. 883, 884 (1930) (citations omitted). "Speculative purposes will not support the assertion of necessity." *Id.* We must uphold the trial court's finding on the issue of necessity unless it is clearly erroneous. *City of Shakopee v. Minnesota Valley Elec. Coop.*, 303 N.W.2d 58, 62 (Minn.1981).

■ The University has the burden of proving that the taking is necessary. *Minneapolis & St. Louis R.R. v. Village of Hartland*, 85 Minn. 76, 78, 88 N.W. 423, 423–24 (1901). The record supports the trial court's finding that the University has failed to demonstrate that the proposed taking is necessary.

First, the record indicates that the University has not included this property on its master plan for its anticipated development of the Twin Cities campus. Second, although the University claims to have at least three potential uses for the land, the uses are mutually exclusive, and the Board of Regents has not yet approved a single project for the property. Finally, because of soil contamination problems, it is undisputed that the University could not currently use the property for any of its proposed uses. The parties have not yet agreed on a remediation plan; decontamination of the property will require from approximately two to seven years to complete. At least one University official has described the time period before the University would use the property as "potentially indefinite." Based on this combination of factors, we conclude that the trial court did not clearly err in finding that the University had failed to demonstrate the required level of necessity for condemnation.

The University may well have the right to purchase this property, but it cannot acquire it for speculative future use (stockpiling) by condemnation.

Because we affirm the trial court's finding on the issue of necessity, we need not consider other issues raised by appellants.

## DECISION

Because the trial court did not clearly err in finding that the University's proposed condemnation was not necessary, it properly dismissed the University's petition to acquire the subject property.

**Affirmed.**