ITASCA COUNTY, petitioner,
Appellant,

v.

Douglas John CARPENTER,
Respondent.

No. C3–99–751.

Court of Appeals of Minnesota.

Nov. 30, 1999.

John J. Muhar, Itasca County Attorney, Michael J. Haig, Assistant County Attorney, Grand Rapids, MN (for appellant).

Douglas John Carpenter, Darlene Ione Carpenter, Deer River, MN ( pro se respondents).

Considered and decided by HALBROOKS, Presiding Judge, KLAPHAKE, Judge, and G. BARRY ANDERSON, Judge.

## OPINION

G. BARRY ANDERSON, Judge.

Appellant challenges the district court's dismissal of its condemnation petition. Because condemnation of respondent's land is necessary to achieve a public purpose, we reverse.

## FACTS

In September 1997, the Itasca County Board authorized appellant Itasca County to construct County Road 115. Appellant began proceedings under Minn.Stat. ch. 117 (1996) to condemn land owned by respondent Douglas Carpenter. In February 1998, the district court authorized appellant to "quick take" respondent's property. Respondent did not challenge condemnation at this proceeding. In April 1998, respondent sought dismissal of appellant's petition because appellant had not and would not be able to, under the then-existing plan, acquire all the land necessary to construct the road. The route of the proposed highway, in addition to crossing respondent's property, also traversed tribal land owned by an individual. Respondent's dismissal motion was based on the individual owner's testimony that he would never consent to condemnation of his land. Relying on its interpretation of applicable federal law, the district court declared that consent of the individual owner of land held, in part, by an Indian tribe was necessary to successfully condemn the neighboring Indian land. Because

there was no such consent, condemnation was not possible. As a result, construction of the road was impossible, and the court dismissed appellant's condemnation petition.

## ISSUES

Did the district court err in dismissing appellant's petition to condemn respondent's property on the grounds of legal impossibility?

## ANALYSIS

The district court concluded that condemnation of respondent's land was not "reasonably necessary" to achieve a "proper purpose." An appellate court reviews a district court's necessity findings under a clearly erroneous standard. *Regents of University of Minn. v. Chicago and N.W. Transp. Co.*, 552 N.W.2d 578, 580 (Minn. App.1996), *review denied* (Minn. Nov. 20, 1996).

Generally, courts should engage in "'an extremely narrow'" review of a condemnation petition. *City of Duluth v. State*, 390 N.W.2d 757, 762 (Minn.1986) (quoting *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 240, 104 S.Ct. 2321, 2329, 81 L.Ed.2d 186 (1984)). However, such a standard is applied when reviewing a challenge to condemnation, in contrast to the present appeal where we are reviewing a denial of the right to condemn. Nevertheless, on appeal our decision rests on whether the district court conducted the appropriate "extremely narrow" review of appellant's petition when deciding the necessity of the proposed condemnation.

The Minnesota Constitution provides that private property may be condemned upon the demonstration of a "public use." Minn. Const. art. I, § 13. While what constitutes a "public use" is a judicial decision, the deferential scope of review requires a broad interpretation of this term. *Duluth*, 390 N.W.2d at 763. County construction of a highway, in light of "some evidence" in the record evidenc-

ing a "public purpose," has been held to justify condemnation. *County of Dakota (C.P.46–06) v. City of Lakeville*, 559 N.W.2d 716, 720 (Minn.App.1997).

The condemning authority first has the burden of establishing that the taking is necessary. *Id.; see* Minn.Stat. § 117.075 (1996) (requiring demonstration of necessity prior to condemnation). Courts have not required a finding of "absolute necessity" but have concluded that "[i]t is enough to find that 'the proposed taking is reasonably necessary or convenient for the furtherance of a proper purpose.'" *Duluth*, 390 N.W.2d at 764–65 (citation omitted). All that is required is the demonstration of a "necessity" either "'now or in the near future.'" *Regents*, 552 N.W.2d at 580 (citation omitted).

The record clearly establishes that respondent's land is necessary for appellant to accomplish its road project. Appellant initiated the condemnation petition to expand an existing gravel road to become County Road 115. Appellant is a road authority pursuant to Minn.Stat. §§ 160.02, 160.04 (1996), and is empowered to acquire necessary rights-of-way for highways pursuant to Minn.Stat. § 163.02 (1996). Under Minn.Stat. § 163.11 (1996), appellant's county board passed a resolution for the construction of the highway. The resolution required the acquisition of a southern portion of respondent's property over which the gravel road crossed. The resolution also called for the acquisition of a portion of neighboring tribal land, Leech Lake allotment number 1137 (LL–1137), owned by an individual unwilling to grant consent to the condemnation petition.

Once necessity has been established, condemnation may only be denied when the party contesting condemnation demonstrates that the condemnation proposal is manifestly arbitrary or unreasonable. *Regents*, 552 N.W.2d at 580. An arbitrary and unreasonable manner has been defined as acting "'capriciously, irrationally, and without basis in law or under

conditions which do not authorize or permit the exercise of the asserted power.'" *Id.* (quoting *Housing & Redev. Auth. v. Minneapolis Metro. Co.*, 259 Minn. 1, 15, 104 N.W.2d 864, 874 (1960)).

■ The court concluded, based on the testimony of the individual owner of tribal land LL–1137, that he would never consent to appellant's acquisition of his land, that the condemnation could not be completed and therefore that the road could not be constructed. Thus, acquisition of respondent's land by Itasca County was pointless, not "reasonably necessary" to serve a "public purpose," and arbitrary and capricious.

■ We have held that "'[s]peculative purposes will not support the assertion of necessity.'" *Regents*, 552 N.W.2d at 580 (quoting *State ex rel Duluth v. Duluth St. Ry.*, 179 Minn. 548, 551, 229 N.W. 883, 884 (1930)). The *Duluth* court had previously noted that "[j]udicial deference to a legislative determination that land being condemned is for a public use is * * * 'required until it is shown to involve an impossibility.'" 390 N.W.2d at 762 (quoting *Midkiff*, 467 U.S. at 240, 104 S.Ct. at 2329).

Yet in this case we have neither a speculative purpose nor a legal impossibility.

In *Regents*, we examined the issue of a speculative purpose when affirming dismissal of a condemnation proceeding because the condemning authority, the University of Minnesota, had failed to demonstrate that the taking was necessary. 552 N.W.2d at 580. The court affirmed the lack of necessity because the university did not have either present or future plans for the property, no projects had been approved for the site, and no consideration had been given towards a remediation plan necessary to resolve soil contamination problems at the site. *Id.* The court finally concluded that the condemning authority "may well have the right to purchase this property, but it cannot acquire it for speculative use

(stockpiling) by condemnation." *Id.* The rule established in *Regents*, however, is limited by the extreme facts present in that controversy and has no application here.

The issue of legal impossibility has also come under review in Minnesota. In 1914, the supreme court explained that to find a public purpose in support of condemnation under the eminent domain statutes requires a finding that the purpose "can be attained." *Minnesota Canal & Power Co. v. Fall Lake Boom Co.*, 127 Minn. 23, 33, 148 N.W. 561, 564 (1914). "[B]efore the court can find that the property is being taken for and will be applied to a public use, it must find that the purpose of the enterprise can be accomplished in the manner and through the means proposed." *Id.* at 32–33, 148 N.W. at 564. The court concluded that although the petitioner possessed the power of eminent domain, because the law prohibited portions of its project it was not in fact attainable and condemnation was denied. *Id.* In this case, federal law potentially prohibits condemnation of the land held by respondent's neighbor, thus it may be legally impossible to complete the project in its present form. The project as it relates to respondent's land arguably becomes speculative.

Yet appellant's ability to complete the county road should not be at issue. The legislature has both mandated and empowered appellant to complete such construction. *See* Minn.Stat. §§ 160.04, 163.11. Generally, there is nothing illegal or speculative about road construction. Because the power of appellant to propose and construct such a project is not at issue, our focus turns to whether condemnation of respondent's land is reasonably necessary to accomplish this purpose, not whether appellant will actually be able to accomplish the project.

Recently, we examined similar issues when deciding *In re Condemnation by MCDA*, 582 N.W.2d 596 (Minn.App.1998). In *MCDA*, Minneapolis sought condemnation of land owned by Opus Northwest, on be-

half of a construction and development project proposed by the Ryan Corporation that would include a retail store owned and operated by Dayton Hudson Corporation. We rejected reliance on *Fall Lake,* 127 Minn. 23, 148 N.W. 561 and an argument that because Dayton Hudson did not have an affirmative-action plan, as required by city ordinance, the condemnation was illegal. 582 N.W.2d at 600. We allowed condemnation because the public purposes of the project—such as a mid-priced retail store, and increased public parking and employment—and the means of accomplishment were all legal. *Id.* At 600–01. In contrast, *Fall Lake* featured a public project that, regardless of how attempted, would not be permitted by law. Similarly, the contention that appellant cannot condemn respondent's neighbor's land is not relevant as to whether both the rationale for and means of accomplishment of County Road 115 are legal.

Moreover, similar to the present case, the *MCDA* court rejected Opus' argument that the project was too speculative. Opus argued that the project was speculative because the city had failed to condemn all property necessary to complete the project. The court rejected this argument because this problem was within the city's control. 582 N.W.2d at 601. The court's reasoning is persuasive. Unlike *Regents,* appellant here has proposed and designed a project. Moreover, there is no demonstration that condemnation of respondent's land affects whether completion of the project is attainable. Although there may be some question as to whether appellant may complete the project in its present form, either other avenues of obtaining the neighboring land exist or modification of the existing plan is within appellant's control.

Federal law pertaining to condemnation of tribal land is immaterial. The proper focus is respondent's land. Appellant has demonstrated a reasonable "public purpose"—to build a highway. *See City of Lakeville,* 559 N.W.2d at 720 ("some evidence" in the record evidencing a "public purpose" for road construction has been held to justify condemnation). Moreover, Minn.Stat. §§ 160.04, 163.11 empower appellant to expand the existing roadway as directed by the county board. A plan has been approved. Regardless of whether appellant is able to complete the project as presently planned, respondent's tract is "reasonably necessary" to complete a "public purpose," *City of Lakeville,* 559 N.W.2d at 720, and use of that land for that purpose is neither arbitrary nor capricious. *See Regents,* 552 N.W.2d at 580. To hold otherwise would enmesh the courts in an endless series of reviews of the practicability of executive and legislative plans and decisions and would be contrary to well-settled principles of eminent domain.

Because of our ruling on the condemnation issue, we need not reach appellant's additional arguments. We also reject respondent's argument as to the board's failure to name respondent in its resolution. Generally, we will not consider matters not argued and considered in the court below. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn. 1988). The interests of justice do not require us to review this marginal claim not raised at district court. *See* Minn. R. Civ. P. 103.04 (appellate court reviews a judgment "as the interest of justice may require"). Finally, we strike pages 5 to 38 of respondent's appendix, because they were not part of the district court record. *See In re Fairview–Univ. Med. Ctr.,* 590 N.W.2d 150, 155 (Minn.App.1999) ("Matters outside the record may not be considered by an appellate court and must be stricken." (citation omitted)).

## DECISION

The district court did not conduct an "extremely narrow" review of this condemnation petition when it dismissed the petition based on difficulties associated with condemnation of the neighboring land. Because the court failed to decide this case on the question of the necessity of respon-

dent's land to the appellant's project, the court's conclusion was clearly erroneous. Our own review of the law of eminent domain leads to the conclusion that respondent's land is reasonably necessary to achieve a public purpose.

**Reversed.**